PAULINE FRANCES WHITNEY *v.* ROBERT
HARDING WHITNEY

ROBERT HARDING WHITNEY *v.* PAULINE
FRANCES WHITNEY

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued January 9—decision released May 4, 1976

*Mary V. McCarthy,* for the appellant (plaintiff in the first case and defendant in the second case).

*Michael E. Grossmann,* with whom was *William J. Butler,* for the appellee (defendant in the first case and plaintiff in the second case).

LOISELLE, J. In the first-named action, the plaintiff wife, by complaint dated July 22, 1971, sought a divorce, custody of minor children, child support and alimony from the defendant husband. In the second-named action the husband as plaintiff, by complaint dated July 26, 1972, sought possession of and legal title to real and personal property held in the name of the wife. The cases were referred to Hon. Samuel S. Googel, a state referee, and were heard together. The parties' trial counsel agreed that the evidence adduced would apply to both

actions. Judgment in both actions was rendered on June 13, 1973. In the first action the state referee, exercising the powers of the Superior Court and hereinafter referred to as the court, granted the wife a divorce, awarded her custody of the two minor children, ordered the husband to make child support and alimony payments and determined the parties' rights in two joint savings accounts. In the second action the court ordered the wife to convey to the husband certain real property and to transfer to him certain shares of stock. The wife has appealed from both judgments including therein as error the denials of motions to open those judgments. The first-named action will be considered first, then the second-named action, and finally the denials of the motions to open the judgments arising from both actions.

The following is a summary of facts, found by the court, sufficient to discuss the issues presented in the first action. The parties were married in 1942. At the time of judgment, the parties had two minor children, both of whom resided with the wife.

The wife owned the house the family lived in. The house and its furnishings were valued at $95,000. The wife also held title to two parcels of Florida land purchased in 1965 or 1966 for $5000, held stock in her name valued at $16,035, and had bank accounts with $11,896 on deposit. The house, the land and the shares of stock were purchased with the husband's earnings.

The parties jointly owned shares of stock valued at $36,556 and United States government bonds valued at $1800. Further, the parties had $32,800 in joint savings accounts before the wife closed them out when difficulties developed between the parties.

The jointly owned shares of stock and bonds and the joint savings accounts were directly attributable to the husband's earnings.

The husband is an engineer who earns his income from the management and ownership of Production Services Corporation, a company he organized in the 1940's. In the last few years Production Services has been seriously affected by economic conditions and it is in financial difficulties. At the time of the judgment the husband's gross monthly income was $1200 and his net monthly income was $1000. The court also found that the husband will receive approximately $33,500 as his share of his deceased father's estate.

The court concluded that the husband was guilty of intolerable cruelty to the wife and awarded custody of the two minor children to the plaintiff. As alimony the husband was ordered to transfer to the wife all jointly owned bank deposits, securities and bonds and, as additional alimony, to pay $500 per month. The husband was also ordered to pay $300 per month for the support of the two minor children and to maintain C.M.S. and Blue Cross insurance, or the equivalent, for their benefit. The court ordered the proceeds of the two joint savings accounts closed out by the wife to be shared equally by the parties. The wife asserts that the referee erred by failing to award a higher amount of alimony and child support, by ordering her to reimburse the husband for one-half of the proceeds of the joint savings accounts and by finding and failing to find certain facts.

The first twenty-four paragraphs of the wife's assignments of error in the first case are claims that the facts found were not substantiated because they

were based solely on the testimony of the husband. "It is futile to assign error involving the weight of testimony or the credibility of witnesses. *Hartford-Connecticut Trust Co.* v. *Putnam Phalanx,* 138 Conn. 695, 699, 88 A.2d 393." *West Hill Construction Corporation* v. *Horwath,* 149 Conn. 608, 612, 182 A.2d 919.

Thirty-six paragraphs of the wife's assignments of error relate to the court's failure to adopt certain draft findings. These paragraphs refer to the domestic life of the parties, the extramarital involvement of the husband, his sentencing for criminal activity during the marriage, and the aid the wife rendered to help the husband achieve what success he had in his business in the early years. The court did find intolerable cruelty on the part of the husband and some of the facts claimed are included in the finding of the second case. The wife has failed to show that the remaining paragraphs of the draft finding were admitted or undisputed. *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 264, 320 A.2d 811; *Walsh* v. *Turlick,* 164 Conn. 75, 77, 316 A.2d 759. Twenty-four paragraphs assign error in that part of the finding pertaining to a motion to open the judgment which will be considered later.

"The primary basis for an award of alimony has been not to punish a guilty spouse but to continue the duty to support the other who, in legal contemplation, was abandoned." *Tobey* v. *Tobey,* 165 Conn. 742, 748, 345 A.2d 21. In awarding alimony, the court exercises its sound discretion, taking into consideration the circumstances of the case such as the amount of the estate of the spouse, his or her income, age, health and earning capacity; and

the age, health, station, separate estate and earnings of the party to be granted alimony. *Tobey* v. *Tobey,* supra; *Heard* v. *Heard,* 116 Conn. 632, 636, 166 A. 67.[1]

The total assets of the wife after judgment were in excess of $161,000. The additional award of alimony amounted to $500 out of the $1000 monthly net income of the husband. The wife contends the award was too small considering the standard of living to which she had become accustomed. She asserts that her manner of living requires an award of $500 per week. She also asserts that her husband at one time earned $60,000 a year and has a high earning capacity for the future, and that he is able to, and should be required to, pay her $500 per week. An award based on earning capacity rather than actual earned income is correct in the proper case, especially where one has wilfully depleted his or her earnings in an attempt to deny or limit the amount of alimony paid to a former spouse. See *Tobey* v. *Tobey,* supra, 749; *Yates* v. *Yates,* 155 Conn. 544, 548–49, 235 A.2d 656. In this case there is no finding that the husband voluntarily or wilfully depleted his earnings, or that his earning capacity was other than that found by the court. Taking into consideration the earnings of the husband, the

---

[1] Section 46-21 of the General Statutes, under which the court awarded alimony to the plaintiff, has been repealed by Public Acts 1973, No. 73-373, § 43, and has been replaced in part by §§ 20 and 21 of that act, now General Statutes §§ 46-51 and 46-52 respectively. General Statutes § 46-64b, enacted as § 16 of Public Acts 1974, No. 74-169, provides that § 46-52 will apply to appeals from any alimony order entered pursuant to a decree of divorce rendered prior to the effective date, October 1, 1973, of Public Act No. 73-373. Even if we assume that § 46-64b applies to appeals taken prior to October 1, 1973, a question which we do not decide, an application of § 46-52 would not change the factors for awards of alimony in this appeal.

assets of both parties at the time of the hearing, and the other circumstances found, the court did not abuse its discretion in its determination of the amount of alimony awarded to the wife. *LaBella* v. *LaBella*, 134 Conn. 312, 318, 57 A.2d 627.

To determine the amount of support required by minor children, the court considers the needs of the children and the respective abilities of the parents to maintain them.[2] The wife contends that the support of the children, in the manner to which they had become accustomed, would require $1031.68 per month. The husband was ordered to pay $300 per month out of his $1000 net monthly income. Based on the respective abilities of the parents, including the husband's earning capacity, discussed above, the court did not abuse its discretion in its award of child support.[3] *Shrager* v. *Shrager*, 144 Conn. 483, 486, 134 A.2d 69.

That part of the judgment ordering the parties to share equally the proceeds of the joint savings accounts was proper. In view of the disposition of the other property in the judgment and the source of the funds in the accounts, the court did not abuse its discretion.

In the second case, the husband brought an action against his wife claiming all assets held by his wife wholly or jointly with him. The court found a result-

---

[2] Section 46-26 of the General Statutes, under which the court awarded child support, was repealed by Public Acts 1973, No. 73-373, § 43. Section 26 of that act, as amended by Public Acts 1974, No. 74-169, § 14, now § 46-57 of the General Statutes, provides for support orders and details the factors to be considered in determining the award. Assuming its applicability, the outcome of this part of the appeal would be the same.

[3] The wife's claim as to support for the daughter Elaine is without merit as General Statutes § 1-1d, as of October 1, 1972, changed the age of majority from twenty-one to eighteen years.

ing trust in favor of the husband of real and personal property held by the wife in her name limited to 200 shares of stock in Production Services Corporation, 500 shares of stock in Bo-Pak Corporation and the real property located at 33–35 East Cedar Street, Newington, Connecticut. All other assets were retained or awarded to the wife as alimony in the divorce action. The court made a finding in this case including facts previously referred to in the first action.

The court's finding in the second action is, in part, as follows: In the 1940's, the husband founded Production Services Corporation with two other persons. By the early 1950's the husband was the sole owner of the company. At that time fourteen shares of stock had been issued. By law, a corporation required three directors.[4] To meet this requirement the wife was made a director of the company. As the corporate bylaws required a director to be a stockholder, two shares of stock were assigned to her from the corporation. The wife was informed that the stock was put in her name because it was necessary. Even though the wife paid no consideration for the shares of stock, the husband never intended to make a gift of them. Furthermore, there was an agreement between the husband and wife that the shares of stock would be transferred to the husband whenever he requested. At the time of judgment there were 1400 outstanding shares of Production Services Corporation. The husband had placed 420 shares in his children's names. Dividends paid on these shares have gone into the children's accounts. He had retained 780 shares and the wife had 200 shares. All decisions concerning Production

---

[4] This requirement was modified by Public Acts 1965, No. 452, § 2. See General Statutes § 33-314 (a).

Services Corporation were made by the husband. The company prospered for a time but, at the time of judgment, it was in dire financial straits. It was agreed by the parties that the book value of each share of stock was $90.

Bo-Pak Corporation owns the premises where the operations of Production Services Corporation are carried out. The husband formed Bo-Pak in 1961. At formation, he put 500 shares of Bo-Pak's stock in his wife's name and retained the remaining 500 shares. The wife paid no consideration for these shares of stock, and the funds to acquire the assets and stock of Bo-Pak Corporation came from the husband's earnings. The husband placed the shares of stock in his wife's name for tax purposes with no intention that they were to be a gift. The parties agreed that the wife would transfer the stock to him upon request. Furthermore, the parties understood that the husband could do anything he wanted to do with the stock. Decisions concerning Bo-Pak Corporation were made by the husband. The wife did not remember any details concerning the stock being placed in her name, never considered the stock a gift and did not claim ownership. Rather, she claimed that the corporation was set up for the benefit of the children.

The husband had purchased a two-family dwelling and land at 33–35 East Cedar Street, Newington, in 1967. The property is adjacent to the property where Production Services conducts its business. The purpose of the purchase was for expansion of Production Services Corporation. The husband placed the title to the property in the wife's name when he purchased it. The wife paid nothing toward the purchase of the premises. There was an understanding between them that the wife would reconvey

the premises to either the husband or a third party at the husband's request. The husband did not intend to make a gift of these premises. The husband managed and maintained the property and collected the rents. The premises were valued at $34,500 with an outstanding mortgage of $7000.

The wife asserts that the shares of stock in the two corporations and the real property were gifts; that there were no resulting, constructive, or express trusts in favor of the husband in any of the property; that she had an equitable interest in the property; and that the award was contrary to existing statutes. In addition the wife attacks the findings of the court and claims the facts to be otherwise. Counsel for the husband claims that the assignments of error were not properly briefed even though extensively argued in the wife's brief. Aside from this argument, the appendix of the husband does support the finding of the court in the material facts recited above. It is true that, in large part, the supporting testimony is that of the husband, but nothing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. *Salvatore* v. *Milicki,* 163 Conn. 275, 278, 303 A.2d 734; *Slavitt* v. *Ives,* 163 Conn. 198, 212, 303 A.2d 13; *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641. The finding of the court cannot be disturbed.

In *Walter* v. *Home National Bank & Trust Co.,* 148 Conn. 635, 638, 173 A.2d 503, the principles of law involving a purchase money resulting trust and a presumptive gift to a spouse were clearly and succinctly stated: "When the purchase money for property is paid by one and the legal title is taken in the name of another, a resulting trust ordinarily arises at once, by operation of law, in favor of the

one paying the money. *Franke* v. *Franke,* 140 Conn. 133, 138, 98 A.2d 804; *Ward* v. *Ward,* 59 Conn. 188, 195, 22 A. 149. If it can be proved that the intention of the parties was otherwise, there is no resulting trust. *Wilson* v. *Warner,* 89 Conn. 243, 246, 93 A. 533. If the purchase price is paid by one spouse and the conveyance is taken in the name of the other, there is a presumption that a gift was intended. *Ward* v. *Ward,* supra; *White* v. *Amenta,* 110 Conn. 314, 317, 148 A. 345. This presumption, however, is one of fact and not of law and may be rebutted. *Corr's Appeal,* 62 Conn. 403, 407, 26 A. 478; *Fox* v. *Shanley,* 94 Conn. 350, 357, 109 A. 249. The case at bar presented the question of the plaintiff's intention. Intent is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which could not reasonably be drawn. *Meriden Trust & Safe Deposit Co.* v. *Miller,* 88 Conn. 157, 162, 90 A. 228; *D. M. Read Co.* v. *American Bank & Trust Co.,* 110 Conn. 461, 462, 148 A. 130."

The transactions with the shares of stock in the corporations and the real property would raise the inference that purchase money resulting trusts had been created but for the rule of presumptive gifts when spouses are payor and grantee. The court found, however, that the husband did not intend to make a gift of either the stock or the premises at 33–35 East Cedar Street.

The parties' agreements that the realty and the shares of stock were to be returned upon the husband's request and the husband's complete control of the property are facts that rebut the presumption that the property was a gift and are facts proving that the husband did not intend that the wife should have any beneficial interests in the

property. See *Fox* v. *Shanley,* 94 Conn. 350, 357, 109 A. 249; *Wilson* v. *Warner,* 89 Conn. 243, 246–48, 93 A. 533; see also 5 Scott, Trusts (3d Ed.) § 443. The husband, therefore, met the burden of proof. *Walter* v. *Home National Bank & Trust Co.,* supra, 639. The subordinate facts found by the court amply support the conclusion that the husband did not intend to make a gift of either the shares of stock or the real property at 33–35 East Cedar Street, Newington, and that a resulting trust in his favor should be enforced.

The court also found constructive trusts of the above property in favor of the husband. Whether the findings or the law support that conclusion is a matter we need not decide.

The wife also claims that the court's action was contrary to statutes in effect at the time of the judgment. Part of her claim is that under General Statutes § 46-21 there was no provision for assigning to the husband part of the estate of the wife.[5] The other part of this claim is that the court's action was contrary to § 46-22a as it was she who was granted the divorce.[6] The short answer is that the statutes were not applicable to the second action.

---

[5] Section 46-21 provided for alimony. The applicable provision said: "The superior court may assign to any woman divorced by such court a part of the estate of her husband . . . ." The section was repealed by Public Acts 1973, No. 73-373, § 43.

[6] "[General Statutes] Sec. 46-22a. WHEN ESTATE REVERTS TO SPOUSE. When any married person derives any estate from his or her spouse in consideration of their marriage, or of love and affection, and such spouse is granted a divorce from such person under the laws of this state, the court which grants the divorce, as part of the decree, may provide that such estate or any part thereof in the possession of such person or standing in his or her name shall belong to the spouse granted the divorce." This section was repealed by Public Acts 1973, No. 73-373, § 43.

The judgments in these cases were rendered in the 1972–1973 term of the Superior Court during the April session. The wife moved to open the judgment in the first action during the September session of the 1973–1974 term of the Superior Court. She moved to open the judgment in the second action during the January session of the 1973–1974 term. Both motions were denied on March 27, 1974. At the hearing on these motions no evidence was offered by the wife and no testimony was heard. The court was not in error in refusing to modify the judgments. *Cichy* v. *Kostyk,* 143 Conn. 688, 695–96, 125 A.2d 483; see also *Freccia* v. *Martin,* 163 Conn. 160, 165–66, 302 A.2d 280; *Stocking* v. *Ives,* 156 Conn. 70, 72, 238 A.2d 421.

In both actions the wife claims that, because a judgment was rendered by a' judge of the Superior Court later than in the session next following that in which the case was heard, both judgments should be set aside. This court has recognized that the rule does not apply to state referees. *Florida Hill Road Corporation* v. *Commissioner of Agriculture,* 164 Conn. 360, 321 A.2d 856.

There is no error in either case.

In this opinion the other judges concurred.