[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The 43 year old plaintiff wife has brought this action seeking to dissolve the marriage to the 44 year old defendant husband on the ground of irretrievable breakdown. The plaintiff's complaint also alleges a second count of intolerable cruelty and a third count alleges that the defendant has been guilty of adultery.
The case was tried primarily by presentation of evidence in support of the first count. As to the second count, the court finds that the element of intolerable not proven. McCurry v. McCurry, 126 Conn. 175, 178 (1939).
The defendant admitted to an affair in 1976 or 1977 which led to the commencement of an earlier action for dissolution by the plaintiff. The plaintiff subsequently withdrew her action and the parties resumed cohabitation as husband and wife. The defendant's CT Page 1602 behavior was thereby condoned. Bagdan v. Bagdan, 100 Conn. 521,523 (1924).
The present action was commenced by complaint dated February 16, 1990. The parties had been living separately since October 31, 1989.
The parties married six months after their first meeting. The court concludes, from the parties' testimony, that they married because the plaintiff was pregnant with child conceived with defendant, which child was born six months later. That child, Yvonne DeLisle, now 21 years old, was called to the witness stand by the plaintiff to corroborate her mother's version of some of the events of the marriage. After acknowledging that she and her mother have a very close relationship; that all discipline of the children was the defendant's job; that the only episode she related of her parents' fighting occurred when she was in the fifth grade; that she knew of no other physical contact between her parents; that her parents did not have a close relationship; and that she has not spoken to her father in two months although they are sharing the same house, the court gives her biased testimony little weight.
Both parties devoted time and testimony to the conduct of the other party since the commencement of the present action. The court has concluded that the marriage broke down beyond repair prior to October 2, 1989. Therefore, the parties' conduct since then, while living separately, is irrelevant on the question of relative fault. Venuti v. Venuti, 185 Conn. 156 (1981). In fact, both parties are to be complimented for making every effort to provide a home for their children, despite the weak foundation supporting their marriage for each testified that there was little in common between them save making a home for Yvonne and her brother, Christopher, who is now 19 years old.
In considering the many elements set out in Section 46b-81 (c) and Section 46b-82 of Connecticut General Statutes, the causes for the dissolution (i.e. fault) is only one of the many elements to be considered. McPhee v. McPhee, 186 Conn. 167, 170-171 (1982). Each party's testimony described the marriage, but from a separate viewpoint. The court's assessment of their respective testimony is that both parties were direct and credible witnesses. This court does not intend to enter orders that punish either party, cf. Beede v. Beede, 186 Conn. 191 (1982).
The parties purchased their first home in 1971 at 110 Evening Star Drive, Naugatuck for $23,000 with assistance from defendant's mother who gave them $5,000. The parties still own it and there remains a mortgage balance of $13,000. Each party states a fair market value of $135,000 for the property. CT Page 1603
Both parties are in good health. Both parties are high school graduates. The plaintiff has been a factory worker throughout the marriage. The defendant has been employed in retail sales, first with Two Guys and more recently with Caldor's as an assistant manager. Although the defendant received a "Caldor Executive Performance Appraisal" from Caldor dated April 30, 1990 rating his overall performance "good" (Defendant's Exhibit #10), he was terminated by Caldor six months later, after eight years, nine months of service. At termination, his gross weekly salary was $788 and his net disposable weekly income was $569 (Defendant's Exhibit #9).
The defendant has been actively seeking comparable employment. He admits that he rejected two job offers at $38,000 and at $35,000 for they were less than his Caldor salary. Although he is seeking employment at $40,000 annually, his proven earning capacity is less than $40,000. He has been receiving unemployment benefits since his termination at $270 weekly before applicable taxes which defendant estimates to be $40.
The plaintiff and her brother became owners of 82 Albion Street, Naugatuck which was deeded in 1985 from their parents. (Defendant's Exhibit #1). Since 1989, the plaintiff has been residing there. The defendant's mother contributed $2,000 to improvements made at this property. The plaintiff spent $15,000 on improvements.
The defendant's mother died in September, 1989. As a result, the defendant received savings bonds and cash. He gave each child $2,500 leaving $9,000 retained by defendant.
When plaintiff left the employ of McDonald's, she received a pension refund of over $10,000. This was invested in an annuity, tax free bonds and in an I.R.A. The plaintiff also purchased a camper for the family's use for which she paid $4,560.93, (Plaintiff's Exhibit A). She received a settlement of an accident claim in 1978 of about $11,000 which the plaintiff used, in part, to purchase a car, in part to pay bills and in part to buy a motorcycle for the defendant.
The parties dealt with Mr. Ronald J. Iannucci of Naugatuck as their financial advisor and it was through him that the tax free bonds, the annunity and the I.R.A. accounts were created and maintained. As of December 11, 1990, the plaintiff's I.R.A. was valued at $2,409.07. The defendant's I.R.A. was valued at $4,585.50. The jointly held tax free bond was valued at $4,836.37. The defendant's variable annunity was valued at $12,769. (Defendant's Exhibit #6). CT Page 1604
Having reviewed the evidence in light of the statutory criteria, the court enters the following decree.
1. A decree dissolving the marriage of these parties is entered on the first count of the plaintiff's complaint on the ground of irretrievable breakdown.
2. The second count and the third count of the plaintiff's complaint is dismissed.
3. The defendant's counterclaim is dismissed.
4. The defendant shall pay to the plaintiff, as periodic alimony, until she remarries, dies, or until December 31, 1999, the sum of $150 weekly.
Although the defendant is presently unemployed, the court is not staying the effective date of the initial payment of periodic alimony since the defendant has declined to accept available job opportunities. Therefore, the "earning capacity" rule is invoked, Whitney v. Whitney, 171 Conn. 23, 28; Tobey v. Tobey, 165 Conn. 742,747; McKay v. McKay, 174 Conn. 1, 2; Schmidt v. Schmidt,180 Conn. 184, 189 and Miller v. Miller, 181 Conn. 610, 612.
5. The real estate located at 110 Evening Star Drive, Naugatuck, is ordered sold. If the parties cannot agree on the terms of sale, either may move the court for an articulation. Until sold, the defendant is awarded exclusive use of same, and he is ordered to pay the mortgage installments, taxes, insurance and ordinary maintenance. Upon sale, the parties shall divide the net proceeds with plaintiff receiving 60% thereof and defendant receiving 40% thereof. The aluminum siding loan and the energy loan balances shall be paid as part of the cost of closing.
6. The plaintiff shall retain her interest in 87 Albion Street, Naugatuck, free of any claims of the defendant.
7. Each party shall retain the assets received by gift or inheritance from their respective parents.
8. Each party shall retain their respective pension plans, including any I.R.A. or 401 K. plans, free of claim by the other party.
9. The jointly owned tax free bond shall be divided equally between the parties.
10. The defendant shall assign $6,390 of the variable annuity to the plaintiff as her interest therein, either by physical division, buy-out, assignment or surrender so that plaintiff shall CT Page 1605 own or hold the dollar amount stated above as her sole property.
11. The defendant shall obtain at his expense a decreasing term life insurance policy in an amount sufficient to pay the plaintiff the present value of the periodic alimony order, to be maintained in force so long as the alimony order remains in force.
12. The plaintiff shall be the sole owner of the Travelers policy insuring her life and the defendant shall be the sole owner of the Travelers policy insuring his life.
13. The plaintiff may close and keep whatever balance remains in any of the joint checking accounts.
14. The parties shall retain their respective separate bank accounts.
15. The parties shall retain the motor vehicles as their sole property as the vehicles are listed on the financial affidavits except that the plaintiff is awarded sole ownership of the camper and the defendant shall execute any documents necessary to effect the transfer.
16. The plaintiff shall retain all of the furniture, furnishings and other tangibles now located at Albion Street as her sole property except all items that originally were owned by defendant's mother and:
a) a wicker basket;
b) candlesticks;
c) portable tv with stand;
 d) two chain saws, a radial arm saw, a circular saw and defendant's other small hand tools, but not including tools originally owned by plaintiff's father;
 e) defendant's personal effects, including a diving tank.
17. The defendant shall retain all of the furniture, furnishings and other tangibles now located at Evening Star as his sole property except:
a) a freezer
18. The defendant shall retain the uncirculated coin sets, now in his possession, as his sole property. CT Page 1606
19. The defendant is awarded an allowance to prosecute of $2,500. Such sum shall be payable to plaintiff by defendant at the time of closing of title of the Evening Star property.
20. The maiden name of the plaintiff is restored to her and she may resume the name Gentile.
21. Counsel for the plaintiff shall prepare the judgment file.
HARRIGAN, JUDGE.