[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This proceeding is a limited contested dissolution of a marriage between the parties which occurred on November 20, 1970 in Newark, Delaware. The plaintiff has resided continuously in this jurisdiction at least twelve months next before the filing of the complaint. Two children were born of this union: Douglas M. Bachman, November 14, 1975; and Kerry E. Bachman on June 24, 1977. No other minor children have been born to the plaintiff since the date of the marriage. No federal, state or municipal agency, public or private foundation or trust is contributing to the support of either party. The court finds that the marriage has broken down irretrievably and a decree may enter on the grounds of irretrievable breakdown.
The plaintiff is soon to be fifty-one (51) years old and enjoys good physical health. She does, however, complain of the CT Page 8 emotional scars that arose out of the disintegration of her marriage. The defendant is fifty-two (52) years old and in excellent physical and apparent mental health. The plaintiff has an undergraduate degree in education and a Master's from Southern Connecticut State University. The defendant has an undergraduate degree from the University of Connecticut and an MBA from Harvard. She is employed as a media specialist in the Bethel school system at an annual salary of fifty-seven thousand five hundred ninety-six ($57,596) dollars. The defendant is employed as the manager of the Montrose Chemical Corporation of California at an annual salary of one hundred thirty-two thousand ($132,000) dollars per year.
The plaintiff attributes the cause of the breakdown to what her testimony suggests was substantial emotional cruelty, physical cruelty and infidelity. They have not shared a physical relationship since 1992. The defendant seems to be somewhat obsessed with physical fitness and activity and is appalled by anyone whom he perceives to be fat, obese or perhaps overweight. He also criticizes what he inferentially suggests are her spendthrift practices. Any thought or reconciliation between these parties is clearly a delusion. The weightier and more credible evidence leads to the conclusion that the defendant may well be more at fault for this dissolution, but fault is no longer that significant having been become a mere element for consideration as opposed to a controlling determination. SeeSands v. Sands, 188 Conn. 98, 102.
The parties entered the marriage with little or nothing in terms of material contributions. Throughout the course of their life together, they have acquired substantial real estate, savings and checking accounts, securities and bonds, and quite significant retirement accounts. Each of the parties values the totality of their assets as something in excess of one million two hundred fifty thousand ($1,250,000) dollars. Their real estate holdings are all held in joint tenancy with rights of survivorship. The residence is located on Lake Lillianoah and the address thereof is 22 Lake Road in Newtown. They agree upon the fair market value of the premises at two hundred forty-eight thousand ($248,000) dollars and there is no mortgage encumbering the premises. They own two condominiums, the first of which is called the Mosswood Condominium in Fairfield, Connecticut which they agreed has a fair market value of one hundred twenty thousand ($120,000) dollars; the second condominium is located at Woodlake in Woodbury, Connecticut, and the fair market value CT Page 9 thereof is expressed at seventy thousand ($70,000) dollars. Finally, they own three (3) lots in Wellfleet on Cape Cod, Massachusetts. The aggregate value of those lots is two hundred thousand ($200,000) dollars. The total fair market value of their real estate holdings is six hundred thirty-eight thousand ($638,000) dollars according to the plaintiff and five hundred forty-two thousand eight hundred ($542,800) dollars according to the defendant who applies a capital gains computation against the fair market value to arrive at what he believes to be the equity therein.
The defendant is the record owner of a 1987 Acura Legend valued at seven thousand five hundred ($7,500) dollars; a 1994 Acura Legend valued at twenty-eight thousand five hundred ($28,500) dollars; a 1969 power boat and trailer which he values at three thousand ($3,000) dollars. They jointly own a 1985 RV-Itasca valued at ten thousand ($10,000) dollars which currently is out of service with a "blown" engine; and, the plaintiff is the owner of a 1992 Camry valued at thirteen thousand five hundred ($13,500) dollars.
The plaintiff maintains a checking account in the amount of two thousand ($2,000) and a savings account in the amount of one thousand four hundred fifty-two ($1,452) dollars. Both accounts are with the Shawmut Bank. The defendant has a checking account at People's Bank in the amount of three thousand five hundred ($3,500) dollars; a second one at the same institution in the amount of three thousand three hundred ($3,300) dollars; and a third at the First Interstate Bank in California in the amount of ninety-one thousand six hundred eighty-three ($91,683) dollars. In addition, they hold securities and bonds. The plaintiff has a Fidelity/Spartan CT Muni Hi Yield account in the amount of five thousand seven hundred eighty ($5,780) dollars and a second Fidelity/Spartan CT Muni Money Market in the amount of five thousand six hundred four ($5,604) dollars. The defendant owns three shares of DuPont stock at 53-1/4 which computes to one hundred fifty-nine ($159) dollars and Series EE Savings Bonds that aggregate one hundred ($100) dollars.
They jointly own two Fidelity CT Muni Money Market accounts; No. 0379251457 and a second Fidelity/Sparton HiYield No. 0379251440. The aggregate of those two accounts was one hundred forty-three thousand ($143,000) dollars. The plaintiff maintained her interest in the former in the amount of fifty-five thousand eight hundred sixty-one ($55,861) dollars and in the latter at CT Page 10 seventeen thousand four hundred fifty-eight ($17,458) dollars. The defendant withdrew his share of those funds and now shows an investment in United States Treasury Bonds in the amount of seventy-three thousand ($73,000) dollars. They have accomplished a distribution of those two accounts by mutual agreement. The court finds the agreement on that distribution to be a knowing, voluntary and intelligent decision by each effectively distributing that asset. Consequently, it will enter no further orders addressed to what continues to be a jointly held account according to the plaintiff or what is in fact her sole account at this time.
Each of the parties list several valuable assets in their retirement accounts. The plaintiff has an account with United Group of Mutual Funds in the amount of thirty-four thousand four hundred twenty-one ($34,421) dollars; a second account with United Group of Mutual Funds in the amount of fifty-four thousand six hundred seventy-seven ($54,677) dollars; a third with Phoenix Capital Appreciation in the amount of five thousand six hundred nine ($5,609) dollars; a fourth with Phoenix Total Return in the amount of two thousand five hundred eighty-seven ($2,587) dollars; a fifth Phoenix income Growth account in the amount of two thousand eight hundred sixteen ($2,816) dollars; a tax shelter with Great American Life in the amount of sixty-eight thousand six hundred forty-nine ($68,649) dollars; and her Teachers' Retirement account (pension) in the projected amount of one hundred forty-three thousand ($143,000) dollars.
The defendant's retirement assets are a Fidelity Investments Profit Sharing Account in the amount of ten thousand nine hundred fifty ($10,950) dollars; a second Fidelity Money Purchase Account in the amount of ten thousand nine hundred fifty ($10,950) dollars; Colonial Mutual Funds (SARSEP) in the amount of sixty-nine thousand five hundred ($69,500) dollars; an account called American Funds in the amount of forty thousand five hundred ($40,500) dollars and his Social Security Pension Plan, the present value of which as projected by an actuary of something slightly less than eighty thousand ($80,000) dollars. The aggregate total of their retirement accounts expressed in round figures is two hundred forty-one thousand ($241,000) dollars for the plaintiff and two hundred eleven thousand ($211,000) dollars for the defendant. The last property acquisition reposes under the term "other assets" and consists of frequent flier mileage certificates held by the defendant and a jointly held Pennsylvania escrow account arising out of litigation in that CT Page 11 state in an amount approximating twenty-six hundred ($2,600) dollars, and their furniture and personal possessions which they value at fifteen thousand seven hundred seventy ($15,770) dollars.
Custody of the minor child, Kerry, who will reach the age of emancipation on June 24, 1995, is in dispute but hardly to the same extent as are the family assets. The plaintiff has testified that he has little or no relationship with the child and contributes little if anything to her betterment. The impression created by her testimony suggests the relationship with the emancipated son is no better. In view of the testimony from each of the parties of their impression of the other's parenting skills, it becomes readily apparent that the necessary agreements which must be reached to effectuate any successful order of joint custody would never become a reality in this particular case. Consequently, custody of the minor child, Kerry, is awarded to the plaintiff and the defendant may have reasonable, liberal and flexible rights of visitation with her. The court in entering this order finds that it is in the best interests of the child, the standard for any custody award. See Simons v.Simons, 172 Conn. 341; Krasnow v. Krasnow,140 Conn. 254, 260; Sec. 46b-56 of the General Statutes. That statute also requires the court give consideration to the preference of a child or children if that child is of sufficient age to be capable of forming an intelligent decision. The rights, wishes and desires of the parents are also a factor to be taken into account. Both considerations, however, must be subordinated to the best interests of the child. See Ridgeway v.Ridgeway, 180 Conn. 533, 541; Palmieri v.Palmieri, 171 Conn. 289, 290. In passing, it must be noted that the statutory presumption of joint custody being the best interests of the child cannot be sustained in this instance. See Sec. 46b-56a-(b).
The statutory measure of child support directs the court to consider an abundance of factors applicable to the parents and a minimally greater number of considerations applicable to the children. To determine the amount of support required by minor children, the court considers the needs of the children, the respective abilities of the parents and the respective abilities of the parents to maintain them. Brown v. Brown,190 Conn. 345, 348; Whitney v. Whitney, 171 Conn. 23, 29; Sec. 46b-84 of the General Statutes. The statutory criteria and the cases interpreting those criteria have become simplified and CT Page 12 perhaps much more uniformly applied with the introduction of our statutorily created child support and arrearage guidelines. Accordingly, the defendant is ordered to pay to the plaintiff as and for child support the sum of two hundred twenty-five ($225) dollars per week until such time as the minor child attains the age of nineteen (19), if still in school, dies, marries or otherwise becomes emancipated, whichever should first occur. The court finds that this support order comports with the said guidelines and the tolerance granted thereunder. A contingent wage execution may issue.
In determining whether or not an order of alimony may be appropriate in a given case, the court is mandated to consider the length of the marriage, the cause of the dissolution, the age, health, station, occupation, amount and source of income, vocational skills, employability, the estate and needs of each of the parties and any property award in accordance with Sec. 46b-81.Dubicki v. Dubicki, 186 Conn. 709, 714-15; citing therein McPhee v. McPhee, 186 Conn. 167, 171 n. 3; seeKrieble v. Krieble, 168 Conn. 7, 8. Having considered the statutory criteria and the cases that address them, the defendant is ordered to the plaintiff as and for alimony the sum of three hundred fifty ($350) dollars per week for a period of eight (8) years or until such time as the plaintiff may die, remarry, or cohabit with an unrelated male. In the event the defendant should die before his obligation to pay alimony is fulfilled, then and in that event, any monies unpaid as computed to the end of the term or other condition of defeasance shall be a charge against his estate.
The plaintiff is ordered to maintain the medical insurance benefits she currently has as a perquisite to her employment for the benefit of the children so long as the policy provides coverage for those attending undergraduate school. All unreimbursed medical, dental, orthodontia, psychiatric, psychological, nursing, prescriptive drugs and/or medication, counseling and therapy expenses shall be shared equally by the parties and no elective surgery in excess of one thousand ($1,000) dollars shall be the obligation of either party in the absence of a written agreement executed before the procedure is undertaken.
The court has previously mentioned the substantial acquisition of property acquired by the parties during the course of their marital union and it finds that each has contributed CT Page 13 substantially to the acquisition of those assets. In dividing and/or assigning marital property, the trial court must also consider the liabilities of the parties, the opportunity of each for future acquisition of capital assets and income and the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. Dubicki v. Dubicki, supra, 714-15; McPheev. McPhee, supra, 171; Corbin v. Corbin, 179 Conn. 622,624. The court is left to its broad discretion in awarding alimony and dividing property so long as it considers all relevant statutory criteria. It is not obligated to make express findings on each and is not required to give equal weight to each in determining an award. No single criteria is preferred over the others and the weight placed on each is determined upon the circumstances of each case. Debowsky v. Debowsky,12 Conn. App. 525, 526-27; Carpenter v. Carpenter,188 Conn. 736, 740-41; Weiman v. Weiman, 188 Conn. 232,234. The purpose of the property division is to equitably divide the ownership for the parties' property. See Dubicki v.Dubicki, supra, 714 n. 2. It may also be said to unscramble the ownership of property giving to each spouse what is equitably his. Beede v. Beede, 186 Conn. 191, 195; Sec. 46b-81
(c). Once again, this court has considered the statutory criteria and the cases which speak to them.
The plaintiff is ordered to execute and deliver to the defendant a deed conveying all of her right, title and interest in and to the marital residence at 22 Lake Road in Newtown; the Mosswood Condominium in Fairfield; and the Woodlake Condominium in Woodbury, Connecticut. The defendant is ordered to execute and deliver to the plaintiff a deed conveying all of his right, title and interest in and to the three lots located at Wellfleet on Cape Cod, Massachusetts. The documentation necessary to effectuate this order is to be executed within thirty (30) days of the date of this memorandum. However, the plaintiff is awarded use and occupancy of the marital domicile until fifteen (15) days after the minor child, Kerry, leaves home to begin her first year of undergraduate studies; by September 30, 1995; or, until the plaintiff delivers occupancy to the defendant whichever should first occur. Defendant's obligation to pay alimony shall not begin until such time as he obtains exclusive possession of the marital domicile. Until that time, the plaintiff shall assume and discharge sole responsibility for the payment of fuel, electricity, telephone, ordinary maintenance, trash pickup on the property, as well as the ordinary common charges payable to the CT Page 14 respective condominium complexes. To enable the plaintiff to meet these demands, she is to continue to receive the rental income from the condominiums. She is also to pay the taxes and insurance on all three properties for that period. This court has some reservations about the parties' ability to live together in the same structure. However, it has been assured that this has in fact occurred for the last several weeks and appears to be satisfactory to both parties.
The parties have divided their personal property to their satisfaction with the sole exception of a small camcorder which is awarded to the plaintiff. No other order with respect to personal property other than the vehicles is necessary and will not be entered at this time. The plaintiff is awarded the 1992 Camry automobile she currently operates and the defendant is awarded the 1987 Acura Legend, the 1994 Acura Legend and the 1985 RB-Itasca [RV-Itasca], and the 1969 power boat and trailer. Any documentation necessary to effectuate this order shall be accomplished by the parties within thirty (30) days of the date of this memorandum.
Each of the parties is awarded their respective retirement accounts, including the plaintiff's Teachers' Retirement Pension plan and the defendant's Social Security plan. Neither party is awarded any interest whatsoever in the retirement funds, accounts, pension plans, or entitlements of the other. The court considers the Social Security Pension and Teachers' Retirement as offsetting benefits of retirement. In entering this order, the court has considered all applicable statutory criteria, the cases which address them and the unquestionable ability of the defendant to earn more money and to acquire more assets than the plaintiff shall ever be able to do. The parties are ordered to share equally in the three shares of DuPont stock, Series EE Savings Bonds, the frequent flier mileage and the Pennsylvania Escrow account.
Since its inception, this litigation was lengthy and vigorously contested. This court is not unmindful of the "Koizim rule" which recites that those parties who possess "ample liquid funds" resulting from prior court orders should pay their own fees. See Koizim v. Koizim 181 Conn. 492, 501. The measure of ample funds may be found in Venuti v.Venuti, 185 Conn. 156, 163. In this instance, that measure predicates that the court award the plaintiff a contribution to her counsel fees. Accordingly, the defendant is ordered to pay to CT Page 15 the plaintiff as and for contribution to her counsel fees the sum of seven thousand five hundred ($7,500) dollars within sixty (60) days from the date of this memorandum.
Judgment may enter in accordance with the foregoing.
Moraghan, J.