[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The plaintiff and the defendant intermarried on November 11, 1983 in Darien, Connecticut. There are two minor children issue of the marriage: John L. Gallagher III, born January 26, 1985 and Allison E. Gallagher, born September 24, 1988. The plaintiff has resided continuously in this state at least twelve months next preceding the date of filing of the complaint. The marriage has broken down irretrievably.
At the time of trial the plaintiff was 37 and the defendant was 59. This was the second marriage for each party. The plaintiff has two children from her first marriage, Emily, born August 27, 1978, and Abigail, born May 8, 1980. Emily and Abigail lived with the parties and their children; the defendant largely supported them because their own father contributed little for their support. The defendant has children by his first marriage, also, but they have reached the age of majority.
The court next examines the parties' educational backgrounds and work histories. The plaintiff is a high school graduate. When the parties first met, in 1983, she was attending college while her parents cared for her children. She was on welfare. When she married the defendant, he dissuaded her from continuing her education or working. It followed, then, that the plaintiff did not work during the marriage until recently when the marriage CT Page 7733 broke down. Instead, she was the homemaker who raised the four children, those being Emily and Abigail by the plaintiff's first marriage and John and Allison by this marriage.
The plaintiff presently has no earnings. In recent years, to supplement herself financially, the plaintiff took on a part-time job as a sales clerk, earning at or close to a minimum wage. She also obtained a real estate license and earned approximately $30,000.00 from a total of three transactions between late 1994 and 1996. She has apparently allowed her license to lapse. Her plans following the marriage are somewhat vague and uncertain. She knows she will have to work, but she doesn't know in what occupation. The plaintiff claims that the pursuit of a real estate career is too labor intensive to allow her to care for the children. She has thoughts of returning to college to obtain a degree and make herself more employable, but does not know what field she would enter. On the basis of these findings and having observed and listened to the plaintiff at trial, the court concludes that while the plaintiff is employable, she lacks any presently articulable earning capacity and she will depend upon financial assistance from the defendant.
The defendant's educational background and work history are quite different. He has both a college and law degree. He has scarcely ever practiced law, but for the past thirty years has worked in the securities industries primarily as an institutional salesman. In brief, he calls upon portfolio managers and institutions to sell them securities and thereby earn himself commissions. Since 1990, the defendant has worked for six different brokerage firms. He has left each voluntarily, for a variety of stated reasons. The common essence of these reasons was to better himself financially. His earnings have vacillated sharply from year to year. The defendant presently works as a salesman for Sunrise Securities, Inc., and concentrates in biotechnology companies. He is compensated by receiving 50% of commissions generated, with a $10,000.00 per month draw, or advance, against those commissions. By the defendant's own estimate, his actual earned compensation varies between nothing and $12,000.00 monthly.
Due to the uncertainty and fluctuation in the defendant's income, this is an appropriate case for the court to base financial orders on the earning capacity of the parties rather than on actual earned income. Lucy v. Lucy, 183 Conn. 230, 234
(1981). Such an award is especially legitimate where one has CT Page 7734 "wilfully depleted his or her earnings in an attempt to deny or limit the amount of alimony paid to a former spouse," Whitney v.Whitney, 171 Conn. 23, 28 (1976), or has voluntarily and unilaterally left employment resulting in a reduction in income. Miller v. Miller, 181 Conn. 610, 612 (1980).
The court finds the defendant's present earning capacity to be approximately $150,000.00 per year. This is based upon the defendant's age, experience, and the nature and circumstances of his past and present employment. While there are some past years when the defendant has in fact earned substantially more, the court does not believe that there has been a demonstrated consistency in recent earnings or employment circumstances to justify a finding of a higher capacity.
The court next turns briefly to the causes of the breakdown of this marriage. The plaintiff claims that the defendant has verbally, and sometimes, physically abused her and her own children. The defendant maintains that the marriage has broken down because of a financial strain which the plaintiff refused to recognize. The court believes there is an element of truth to what each party says, and that both parties share significantly in the breakdown of this marriage.
A prominent example of the parties' financial predicament involves the marital residence at 29 Swifts Lane, in Darien, Connecticut. The home was purchased in 1983 for $435,000.00 using money from the defendant ($100,000.00) and financing ($335,000.00.) It has been refinanced several times to capture increasing equity as property values rose. The plaintiff claims that monies so realized were for the sole benefit of the defendant and that he has, therefore, already obtained a substantial part of his share of equity in the home. The court has before it no credible evidence that the defendant appropriated to himself monies from these refinancings. The home is appraised by the first mortgagee at $1.1 million and is estimated by the parties to be worth approximately $1.5 million. The first mortgage is approximately $750,000.00. That mortgage was one year or more delinquent at the time of trial and was being foreclosed with a sale date of September 7, 1996.
The defendant also has an alimony obligation to his former first wife. The court finds as fact, those representations set forth in a stipulation between the defendant and his first wife, which was introduced into evidence as Exhibit 20. The defendant CT Page 7735 acknowledged an alimony arrearage of $22,000.00. The defendant's present alimony obligation to his former wife is $2,817.00 per month, but $1,217.00 per month is suspended (i.e. $1,600.00 is due and payable monthly.) In the event the defendant's gross income for 1996 exceeds $70,000.00, the suspended portion of the alimony ($1,217.00 monthly) shall become due and payable. In the event that the defendant's gross income for 1996 is less then $70,000.00, the defendant shall receive a forgiveness of the suspended portion. This court has articulated this finding because its own financial orders are based upon the defendant's current alimony obligation to his former wife being, in 1996, $1,600.00 monthly.
The final matter the court addresses prior to its orders, relates to custody of the parties' children. In her Complaint, Paragraph 2, the plaintiff has requested "temporary and permanent custody of the minor children in accordance with Conn. Gen. Stat. § 46b-56." The defendant has not filed a cross-complaint or pleading requesting joint legal custody. The plaintiff maintains that, therefore, under Emerick v. Emerick, 5 Conn. App. 649
(1985), the court cannot order joint legal custody and must award sole legal custody to her.
The court agrees with the plaintiff that, under Emerick,
joint legal custody cannot be awarded. In Emerick, each party sought sole legal custody of the child. The Appellate Court held that it was error for the trial court to make a prospective award of joint legal custody when neither party has sought it. The present case may be distinguished from Emerick because, here, the defendant never sought either sole custody or joint custody in a cross-complaint or prayer for relief. After careful consideration and a close reading of Emerick, however, this court is persuaded that it is a distinction without a meaningful difference. "The statute [§ 46b-56a(b)], read as a whole, reflects a legislative belief that joint custody cannot work unless both parties are united in its purposes. Therefore, joint custody cannot be an alternative to a sole custody award where neither seeks it and where no opportunity is given to the recalcitrant parent to embrace the concept." Emerick, 5 Conn. App. at 658. See also, Cabera v. Cabera, 23 Conn. App. 330, 346 (1990). It does not save the defendant that his claim for relief filed at the commencement of trial seeks joint legal custody. The request for joint custody must be in the pleadings. Emerick,5 Conn. App. at 652 fn. 2;Tabackman v. Tabackman, 25 Conn. App. 366, 368 (1991). CT Page 7736
The court reaches this conclusion somewhat reluctantly, because the evidence presented would have allowed a finding that joint custody was in the best interest of the children. Each of the parties has attributes which are important in making the types of decisions for the children that the legal custodian must make. The plaintiff was the homemaker and principle care-giver to the children, but the court believes the defendant is the more financially astute party and was also impressed with his devotion to some of the childrens' activities.
The court has considered all the evidence in light of all statutory criteria, and enters the following orders:
1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown.
2. The plaintiff shall have sole legal and physical custody of the minor children, subject to rights of liberal visitation in the defendant. Visitation shall include but not be limited to transportation and attendance at athletic events in which the minor children customarily or may reasonably participate.
3. The defendant shall pay the plaintiff the sum of $35,000.00 as lump sum alimony in two equal installments of $17,500.00, no later then November 1, 1996, and January 1, 1997.
4. The defendant shall pay the plaintiff the stipulated arrearage of pendente lite alimony in the sum of $1,500.00, no later then November 1, 1996.
5. The defendant shall pay the plaintiff the sum of $54,000.00 per year as unallocated periodic alimony and child support in equal installments of $4,500.00 per month, on the first day of each month, in advance, beginning November 1, 1996.
Said unallocated periodic alimony and child support shall continue until the plaintiff's death, remarriage or cohabitation, or until the defendant's becoming age 65, whichever first occurs. In the event that either or both of the children remain minors upon the happening of said event, the court reserves jurisdiction for the purpose of entering appropriate child support orders.
It shall not be a basis for modification in favor of the plaintiff should the defendant earn up to $175,000.00 per year, and it shall not be a basis for modification in favor of the CT Page 7737 defendant should the plaintiff earn up to $30,000.00 per year.
Notwithstanding the foregoing, the parties shall be equally responsible for the payment of reasonable camp and extra curricular activities of the minor children, with the exception of the minor son's hockey expenses, for which the defendant shall be solely responsible.
6. The marital residence at 29 Swifts Lane in Darien, Connecticut, shall be immediately listed for sale and sold on such terms and conditions to which the parties agree and, if they cannot agree, on such terms and conditions to be fixed by the court. In the event that the residence has been sold or is scheduled to be sold pursuant to a judgment of foreclosure by sale, any orders of the court in the foreclosure shall pre-empt the above order to the extent there is a conflict. Following payment of all mortgages and usual and customary closing expenses, the parties shall then share the net proceeds of any sale equally, and each party shall bear any capital gains tax in said proportion.
7. The defendant shall assign and transfer to the plaintiff a 35% interest in any and all Individual Retirement Accounts which the defendant owns, within 30 days; the defendant shall retain ownership of the balance.
8. The plaintiff shall assign and transfer to the defendant any ownership interest in, and the defendant shall own, the MG and 1983 automobiles within 30 days. The defendant shall assign and transfer to the plaintiff any leasehold interest in the 1990 Mercedes station wagon and the plaintiff and the defendant shall equally share all lease payments thereon.
9. The defendant shall assign and transfer to the plaintiff 25% of all frequent flyer miles or similar airline benefits which the defendant owns; the defendant shall retain ownership of the balance.
10. Each party shall retain 50% of jointly owned personal property, including the furnishings of the marital residence and property and furnishings removed by the defendant. In the event the parties are unable to agree upon a division, the matter shall be referred to Family Relations for mediation.
11. The defendant shall be responsible for and shall CT Page 7738 indemnify and hold the plaintiff harmless against any liability arising from any and all tax returns filed during the marriage, including costs of any audits.
12. Unless or to the extent more specifically set forth herein, each party shall retain any assets, and shall be responsible for and indemnify the other against any liabilities set forth on their respective financial affidavits.
13. The defendant shall maintain medical insurance for the benefit of the minor children and shall provide the plaintiff with COBRA coverage, at his expense. All reasonable, necessary and unreimbursed medical, dental, psychological, psychiatric, orthodontia, nursing costs and costs of prescriptive drugs for the children shall be paid 75% by the defendant and 25% by the plaintiff, and for the plaintiff during her COBRA coverage, only, shall be shared equally by the parties.
14. The defendant shall maintain life insurance for the benefit of the plaintiff in the amount of $250,000 for so long as she is entitled to alimony, and thereafter it shall be maintained for the benefit of the children until the youngest attains her majority.
15. The defendant shall pay $25,000 as a contribution to the plaintiff's legal fees, in equal installments due November 1, 1996 and January 1, 1997.
16. Counsel for the plaintiff shall prepare the judgment file. Dated at Stamford, Connecticut, this 4th day of October, 1996.
JOHN F. KAVANEWSKY, JR., JUDGE