[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION de PLAINTIFF'S MOTION FOR ALIMONY AND SUPPORT PENDENTE LITE AND COUNSEL FEES (150)
The subject motion was disposed of in part, as to counsel fees, by agreement dated October 16, 2000, approved and so ordered by the court on said day. The hearing on alimony and child support began on April 3, 2001. This action for dissolution of marriage and other relief was commenced by service on the defendant on March 31, 1999. Both parties have continued to occupy the marital home along with their three minor children, Jordan Elizabeth, 11, Collin McKinney, 8, and Wyatt Joseph, 5.
The defendant was employed by Morgan Stanley Dean Witter from September, 1977 until June, 1998 when he voluntarily left its employ at 44 years of age. His adjusted gross income for 1997 was $2,284,270 including wages of $1,765,545 (Plaintiff's Exhibit 4). His wages earned in 1998 were $881,279, taxable interest was $30,993, ordinary dividends were $75,428, capital gains totaled $4,085,423 and taxable income was $4,801,130 (Plaintiff's Exhibit #57). The bulk of the income came from the sales of Morgan Stanley stock in January, June and July totaling $5,230,429, producing long term gains of $5,011,552 since he acquired all the stock in 1986. The defendant did not work for wages in 1999 but he received three W-2 forms, one from Morgan Stanley Asset Management for $521,836, one from Morgan Stanley International for $446,003, and one from Morgan Stanley Co., Inc. for $6,367,143, a total of $7,334,982 (Plaintiff's Exhibit #58). The tax return lists taxable income of $6,458,244, tax withheld of $2,073,535 and total tax due of $2,530,624. The three W-2 forms were issued since the defendant exercised options that would otherwise have expired twelve months after the termination of his employment.
The defendant has maintained his family at the same level of affluence since leaving his employer by paying all the bills for the family and giving his wife a monthly cash payment. Until the present motion no temporary order was entered for alimony or child support. The plaintiff now seeks an order based on earning capacity rather than his current earnings. He returned to work in September, 2000. He has accepted an offer from Spencer Trask with a starting draw of $250,000 which was his salary base while at Morgan Stanley. As a bond salesman, most of his income was generated by commission in marketing his products.
The court is directed to ". . . . consider all factors enumerated in § 46b-82, except the grounds for the complaint or cross-complaint" in CT Page 7412 making an order for alimony pendente lite. However, in entering a temporary order it is impossible for this court to know what the award, if any, ". . . . which the court may make pursuant to § 46b-81" will be. The recent case of Bleuer v. Bleuer, 59 Conn. App. 167 (2000) approved the property distribution of 80 percent to the plaintiff and 20 percent to the defendant based, in part, on the finding of the defendant's earning capacity although no periodic alimony was awarded to the plaintiff. The court then reviewed the principle as follows:
 "In a marital dissolution proceeding, the court may base financial awards on earning capacity rather than actual earned income of the parties. See, e.g., Venuti v. Venuti, 185 Conn. 156, 161, 440 A.2d 878 (1981); Miller v. Miller, 181 Conn. 610, 611-12, 436 A.2d 279
(1980); Schorsch v. Schorsch 53 Conn. App. 378, 386, 731 A.2d 330 (1999). While there is `no fixed standard' for the determination of an individual's earning capacity; Yates v. Yates, 155 Conn. 544, 548, 235 A.2d 656 (1967); it is well settled that earning capacity `is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health.' Lucy v. Lucy, 183 Conn. 230, 234, 439 A.2d 302 (1981). When determining earning capacity, it also is especially appropriate for the court to consider whether the defendant has wilfully restricted his earning capacity to avoid support obligations. See Miller v. Miller, supra, 181 Conn. 612; Schmidt v. Schmidt, 180 Conn. 184, 189-90, 429 A.2d 470
(1980); Whitney v. Whitney, 171 Conn. 23, 28, 368 A.2d 96
(1976); Tobey v. Tobey, 165 Conn. 742, 749, 345 A.2d 21
(1974); Yates v. Yates, supra, 548-49; Schorsch v. Schorsch, supra, 386; Carey v. Carey, 29 Conn. App. 436, 440, 615 A.2d 516 (1992); Hart v. Hart,. 19 Conn. App. 91, 95, 561 A.2d 151, cert. denied, 212 Conn. 813, 565 A.2d 535 (1989)."
The earlier case of Rubin v. Rubin, 204 Conn. 224, 237 (1987) observes that even if earning capacity is the base of the court's financial awards a periodic order should not exceed the current financial ability of the payor to meet it.
The court infers that both parties accepted the practice of allowing the defendant to pay all of the expenses of the parties' household and CT Page 7413 pay the plaintiff a monthly cash sum and extras from time to time by wire transfer. Although a good deal of evidence was admitted to demonstrate the spending habits of the defendant (Plaintiff's Exhibits #7, 8, 9, 10, 17, 18, 19, 20, 22, 23, 26) the court has no framework within which to compare his spending habits prior to 1999. He claims little has changed. The defendant had been depositing $10,000 monthly until May, 2000 when he reduced it to $5,000 (Defendant's Exhibit #A). The plaintiff lists a monthly budget on her financial affidavit of $17,937 including legal and accounting $2361 and "household $1138." The court finds that legal expenses and accounting expenses should be segregated from the budget. The court also questions the $1138. The plaintiff acknowledges that the defendant has been paying household expenses of $1750 monthly and has been paying total expenses for the family of $50,537 monthly. A literal interpretation of the provision in § 46b-83 that "Full credit shall be given for all sums paid to one party by the other from the date of the filing of such a motion to the date of rendition of such order" must be read, in this case, to mean "paid to or on behalf of one party" or otherwise an injustice would result. Therefore, the court enters an order of unallocated alimony and support, non-taxable to the plaintiff, of $15,000 monthly, payable on the 10th day of each month, commencing on July 10, 2001. A wage withholding order is entered pursuant to statute. The defendant is ordered to continue the present practice of paying the bills supporting the family as long as the present circumstances continue to exist. The court does not address the plaintiff's claim for repayment of credit card bills, therapist bills or the bill of her forensic accountant, all of which will have to wait for the allocation of assets and liabilities as part of the final judgment.
So Ordered.
HARRIGAN, J.T.R.