LAURA L. SCHMIDT *v.* WILLI D. SCHMIDT

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued December 5, 1979—decision released April 1, 1980

*Perley H. Grimes, Jr.,* with whom was *William C. Franklin,* for the appellant (defendant).

*Louise F. Brown,* with whom was *Charles C. Vail,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J.   This appeal arose from the entry of certain orders of alimony, support and payment of joint liabilities at the time of the final dissolution of the parties' marriage.   The dissolution of the marriage and the plaintiff's custody of two minor children were not contested.   After a hearing on the issues of alimony and support, the trial court awarded $100 per week alimony to the plaintiff, $50 per week for the support of each of the two children, and ordered the defendant to maintain certain medical insurance policies for the

benefit of the two children and to assume fully the parties' "joint" liabilities in the amount of $21,838.72. On appeal the defendant husband claims that there was insufficient evidence before the trial court to justify the entry of these orders and, thus, that the orders cannot stand.

## I

We consider first the defendant's claims that relate to the award of alimony and support. Because the defendant indicated in his financial statement that he had no current income whatsoever, the trial court based its award of alimony and support upon two factors: (1) the probable continued receipt by the defendant of substantial amounts of money from his mother; and (2) the defendant's earning capacity. The defendant has made a substantial attack on the finding in this regard.[1] The essence of the attack is that the court's conclusions, upon which this award is based, cannot be supported by certain findings of subordinate facts because those facts were found without evidence and in language of doubtful meaning so that their significance does not clearly appear.

It is this court's duty to strike a finding where it is not supported by evidence. *Providence Electric Co.* v. *Sutton Place, Inc.*, 161 Conn. 242, 245, 287 A.2d 379 (1971); Maltbie, Conn. App. Proc. § 156. Moreover, a finding that is based upon incompetent, equivocal, or speculative evidence cannot stand.

---

[1] The defendant also claims that the court erred in not ruling on his claims of law set out in his draft finding. The trial court found that the defendant did not make any claims of law at the trial upon which this court is obliged to rule, citing Practice Book, 1978, § 3063.

*Fidelity & Casualty Co.* v. *Constitution National Bank,* 167 Conn. 478, 490, 356 A.2d 117 (1975). With these principles in mind, we examine the disputed findings of fact.

The trial court found that, as of October 30, 1978, the defendant had received "assets" from his mother totaling $200,000, and that the defendant's mother had "advanced him funds" for the following purposes: to purchase a house in Sharon; to purchase a house in Cornwall; to purchase a radio station; to purchase a Midas Muffler Shop in Fairfield; to purchase a ping pong business in 1973; to incorporate a business in Delaware in 1978; to travel to Florida and to Maine; and to repair an antique stove. Each of the findings is attacked as having been found in doubtful language so that its significance does not clearly appear. In addition, each finding, except those referring to the funds "advanced" to travel to Florida and to Maine, is attacked as having been found without evidence. The court never stated in its finding whether it considered these "advances" loans or gratuities. The defendant, both in his financial affidavits and in his testimony, claimed that this money was "borrowed" from his mother at various times. The term "advanced," as used in these findings, is ambiguous and unclear. This lack of clarity is compounded by the court's use of the word "assets" to characterize the monies received. In *Stanton* v. *Lewis,* 26 Conn. 444, 449 (1857), the term "assets" was said to specify "everything which can be made available for the payment of debts." The term "advance," on the other hand, can describe money received by loan; see Black's Law Dictionary; or money given for which repayment is expected. See Webster,

Third New International Dictionary.[2] It is clear that if the term advances was meant to describe loans, the two terms are mutually exclusive, for a loan is not an assets but a liability. Unfortunately, the trial court filed no memorandum of decision to which we could look to determine the basis of its decision and to interpret its findings. See *Sempey* v. *Lenz*, 172 Conn. 207, 209, 374 A.2d 188 (1977); *Griffith* v. *Security Ins. Co.*, 167 Conn. 450, 456, 356 A.2d 94 (1975), and cases there cited; Maltbie, Conn. App. Proc. § 152.

We would be called upon to decide if the monies received, whether they be loans, as the defendant contends, or gratuities, as the court suggests, may form part of the basis of an award of alimony and support; see 66 A.L.R. 219, "Gratuities or Expectations as Affecting Amount of Alimony"; were it not for a further defect in the court's conclusions. The court concluded that the monies the defendant received from his mother constituted a "consistent and dependable flow of funds" upon which he could rely. A careful examination of the findings reveals that none supports this conclusion. In fact, an examination of the evidence referred to in the defendant's brief discloses that the only evidence introduced at the hearing on this point was clearly contrary to this conclusion. Therefore, the court's conclusion that the defendant could rely on a "consistent and dependable flow of funds" from his mother, was error, must be stricken, and cannot be

---

[2] The term "advancement" has been defined as an irrevocable gift made by a parent, during his lifetime, to his child with the intention that the child's share in his parent's intestate estate is to be reduced by the amount given. See 3 Am. Jur. 2d, Advancements § 1, and cases there cited. There is no indication that the term "advanced" was used by the court so as to implicate this technical definition.

used to support the award of alimony and support. *Cutler* v. *MacDonald,* 174 Conn. 606, 615, 392 A.2d 476 (1978).

## II

We turn to the defendant's claim that the court's award of alimony and support cannot be justified by the court's conclusion with regard to the defendant's earning capacity. In considering the financial awards, the trial court was required to take into consideration certain relevant statutory criteria. See *Ross* v. *Ross,* 172 Conn. 269, 273, 374 A.2d 185 (1977). Section 46b-82 of the General Statutes provides that in determining alimony the court shall consider, among other things, "the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties." Section 46b-84 (b) contains a similar requirement as it relates to the award of child support.[3] Trial courts are required to consider the statutory criteria in passing upon prayers for such awards in domestic relations matters. See *Posada* v. *Posada,* 179 Conn. 568, 572, 427 A.2d 406 (1980); *Fucci* v. *Fucci,* 179 Conn. 174, 178–81, 425 A.2d 592 (1979). We have held that it is appropriate to enter an award of alimony and child support based on demonstrated earning capacity where the actual income of the party charged with that order is not shown. See *McKay* v. *McKay,* 174 Conn. 1, 2, 381 A.2d 527 (1977). It is especially appropriate for the trial court to base its award on earning capacity rather than actual earned income where, as here,

---

[3] General Statutes § 46b-84 (b) requires the court, in making an award of child support, to "consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents."

there is evidence before the court that the person to be charged has wilfully depleted his or her earnings with a view toward denying or limiting the amount of alimony to be paid to a former spouse. See *Whitney* v. *Whitney,* 171 Conn. 23, 28, 368 A.2d 96 (1976); *Tobey* v. *Tobey,* 165 Conn. 742, 749, 345 A.2d 21 (1974); *Yates* v. *Yates,* 155 Conn. 544, 548–49, 235 A.2d 656 (1967). There was evidence before the court that the defendant voluntarily gave up employment because of the institution of the dissolution action,[4] and that, although the defendant had sufficient income to file an income tax return for 1977, he did not do so.

This question then remains: When an award of alimony and support is to be based upon earning capacity, what type of evidence is required to support that award? Although it is true that there was evidence that supported a finding that the defendant earned a substantial income in the past as a commodities broker, there was no evidence, and hence no finding, of any specific amounts of such income. Under the circumstances, the award of alimony and child support can only be based on speculation and conjecture and cannot stand. This case is to be distinguished from *McKay* v. *McKay,* supra, where we affirmed the trial court's award based on earning capacity. In *McKay* there was evidence of the specific amount once earned by the defendant. *McKay* v. *McKay,* supra, 2. In this case there was no evi-

---

[4] The defendant's financial affidavit filed at the time of the hearing involved in this appeal indicated that he had no income. We also note that the court's finding that he has personal property not listed on his affidavit is not attacked.

dence of the defendant's past salary as a commodities broker,[5] or of the typical salary of a commodities broker of the defendant's ability and experience.

There being no factual basis for the order of alimony and support, it cannot stand.

### III

The defendant also attacks the court's order that he assume sole responsibility for the joint liabilities of the parties totaling $21,833.72, for which debts the plaintiff had co-signed as an accommodation to the defendant. The defendant listed these debts in his financial affidavit as his individual and sole liability, and the court's finding in this regard is unattacked. Moreover, the debts in question were all incurred at the insistence of the defendant.

While there is no express provision in General Statutes § 46b-81 authorizing a court to order that sole liability for the debts of the parties be imposed upon one of the parties, § 46b-81 confers broad powers upon the court in the assignment of property. It provides, in part, that the court "may assign to either the husband or wife all or any part of the estate of the other." Among the factors to be considered in any order entered under § 46b-81 are the "estate, liabilities and needs of each of the parties." We have repeatedly held that the trial court, in a dissolution action, has wide discretion in the type and amount of alimony to be awarded; *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 583, 362 A.2d 835 (1975); *Krieble* v. *Krieble,* 168 Conn.

---

[5] In examining the record before us, we note that an argument of plaintiff's counsel in respect to the defendant's former salary as a commodities broker was based on matters which were not testified to or otherwise before the court as evidence. We cannot consider purported facts which were presented only in argument of counsel. See *Gould* v. *Gould,* 164 Conn. 387, 389, 321 A.2d 443 (1973).

7, 357 A.2d 475 (1975); *Baker* v. *Baker,* 166 Conn. 476, 488, 352 A.2d 277 (1974); and property to be transferred. *LaBella* v. *LaBella,* 134 Conn. 312, 317–18, 57 A.2d 627 (1948). "Such judicial discretion, however, is always a legal discretion exercised according to the recognized principles of equity. *Thomas* v. *Thomas,* 159 Conn. 477, 480, 271 A.2d 62 [1970]; *Hammerberg* v. *Leinert,* 132 Conn. 596, 604, 46 A.2d 420 [1946]." *Pasquariello* v. *Pasquariello,* supra, 583. In *Pasquariello,* we also said that "[t]he judicial standards of review which have developed pertaining to awards of alimony are equally applicable to assignments of property." *Pasquariello* v. *Pasquariello,* supra, 584. In this context, the "estate" of the parties, as referred to in the statute, comprehends the aggregate of the property and liabilities of each. See *Stoner* v. *Stoner,* 163 Conn. 345, 354, 307 A.2d 146 (1972); see also Webster, Third New International Dictionary. We construe the language of § 46b-81 to authorize the trial court to enter the order it did here. In doing so, it did not abuse its discretion.[6]

There is no error in the trial court's order requiring the defendant to assume liability for the joint debts of the parties in the amount of $21,833.72. There is error in the trial court's order of alimony and child support, the judgment is set aside and the case is remanded to the trial court for a new hearing, consistent with this opinion, on those matters.

In this opinion the other judges concurred.

---

[6] We note in this regard that the plaintiff's financial affidavit discloses that she has no income, other than the temporary orders of alimony and support, that she presently uses a borrowed car, and that she and her children reside in a house provided by a married couple.