[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff ("husband") and the defendant ("wife") were married on August 27, 1969 at Wijchen, The Netherlands. Their only child, Margot Catherine Lotz, was born on January 6, 1980, and is now fourteen years of age. The wife interrupted her education in Holland to marry while the husband was in his second year of medical school at Columbia University, from where he graduated in 1972 Phi Beta Kappa with a specialty in pathology. During these early years, the wife was employed as a secretary and helped support him.
In 1976 the husband went to work as a director of a medical laboratory for two years. From 1978 to 1986, the husband taught pathology at the University of South Florida and Brown University. In 1987, he left academia and accepted the position of Chairman of the Pathology Department at Stamford Hospital until CT Page 7075 he resigned on October 1, 1993.
The parties separated in March, 1993 and have lived apart for the past fifteen months. The wife's attorney elicited considerable testimony on cross-examination of the husband of a possible extramarital affair he may have had in 1993 with a colleague pathologist at Stamford Hospital, which the husband denied. While he may have had the opportunity, the court finds the evidence failed to prove it. In any event, this professional relationship did not cause the breakdown of the marriage. The court finds the primary cause was a failure to communicate with each other and a failure to understand their respective needs for love and affection. Venuti v. Venuti, 185 Conn. 156, 159 (1981).
The court finds that the marriage has broken down irretrievably with neither party at fault. Therefore, a decree a dissolution is entered on that ground pursuant to § 46b-40(c) of the General Statutes.
Shortly after his arrival at Stamford Hospital, the husband discovered that a staff pathologist was filing inaccurate reports that placed patients at risk. He reported the information to the President of the hospital with a recommendation to terminate the employment of this pathologist. In the power struggle that developed, the President failed to support the husband's recommendation. The husband felt compelled ethically and morally to offer his resignation, which he did effective October 1, 1993. The hospital bought out his contract for $525,000, of which $125,000 is owed, payable in five remaining payments of $25,000 each and ending October 1, 1994.
The husband testified that he has retired from the practice of medicine and at age forty-six has no intention to practice medicine again. The wife, who is forty-eight years of age, has no plans to return to work and intends to pursue her interests in art and to care for their fourteen year old daughter.
In his claims for relief, the husband has offered to assign the marital assets of approximately $2.6 million equally, which he claims will enable both parties to retire. Should he change his mind and return to the practice of medicine, the husband suggests a lifetime alimony award of $1.00 a year be ordered allowing the wife to seek a modification of judgment.
Counsel for the wife urged the court to assign the CT Page 7076 marital assets sixty percent/forty percent in the wife's favor, and in addition, order lifetime periodic weekly alimony of $1,538.46 or $80,000 a year based on the husband's earning capacity of between $270,000 to $350,000 a year.
 I ASSIGNMENT OF ASSETS (GENERAL STATUTES § 46b-81)
The court may assign to either party all or any part of a marital asset after it has considered all the criteria in § 46b-81(c) of the General Statutes. The division of property is to give to each party what is fair and equitable. Rubin v. Rubin,204 Conn. 224, 228 (1987).
In assigning property rights under § 46b-81 of the General Statutes, the court must consider the length of the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each party, Leo v. Leo, 197 Conn. 1, 5 (1985), and the opportunity of each for the future acquisition of capital assets and income and the contribution of each party to the acquisition, preservation or appreciation in value of the asset.
The parties agree that there are approximately $2,642,500 in liquid marital assets held as follows:
A. ASSETS HELD JOINTLY
 1. Fidelity Security Account $1,627,500 2. Savings and checking accounts 11,000 3. Coin collection 24,000 4. Security Deposit (Rental) 3,000
B. ASSETS HELD BY HUSBAND
 1. Severance Contract, Stamford Hospital 125,000 2. Money Market Accounts 296,000 3. IRA Accounts 255,000 4. T.I.A.A./CREF Retirement 76,000
C. ASSETS HELD BY WIFE
 1. Fidelity Account 215,000 2. Fidelity IRA Account 10,000 CT Page 7077 ---------- TOTAL LIQUID ASSETS $2,642,500
It is undisputed that these assets were acquired by the husband's earnings, most of which were earned during the past five years at Stamford Hospital. His gross earnings at the hospital ranged from $456,159 in 1989 to $718,864 in 1993.
During this twenty-three year marriage, the wife contributed her time as a mother and homemaker enabling the husband to earn these assets. She also made improvements to two marital homes, which the parties purchased and sold, from which they realized substantial capital gains. She also shared in making sound investment decisions allowing the assets to grow.
The court finds that the wife's contributions made her an equal partner in acquiring and managing the $2.6 million of liquid marital assets. In O'Neill v. O'Neill, 13 Conn. App. 300,311, our Appellate Court stated:
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities.
The court has considered all of the statutory criteria in § 46b-81, the case law, the claims for relief and the evidence presented and enters the following order:
1. The above assets shall be distributed equally between the parties, and each party shall be assigned and receive approximately $1,321,250 as follows:
A. ASSETS HELD JOINTLY EQUAL DIVISION CT Page 7078
 1. Fidelity Security Account $1,627,500 $813,750 2. Savings and checking accounts 11,000 5,500 3. Coin collection 24,000 12,000 4. Security Deposit (Rental) 3,000 1,500
B. ASSETS HELD BY HUSBAND
 1. Severance Contract (Stamford Hospital) 125,000 62,500 2. Money Market Accounts 296,000 148,000 3. IRA Accounts 255,000 127,500 4. T.I.A.A./CREF Retirement 76,000 38,000
C. ASSETS HELD BY WIFE
 1. Fidelity Account 215,000 107,500 2. Fidelity IRA Account 10,000 5,000 ---------- ---------- TOTAL LIQUID ASSETS $2,642,500 $1,321,250
All transfers from said accounts shall be done forthwith. A Qualified Domestic Relations Order ("QDRO") shall be prepared by counsel for the husband, and the court shall retain jurisdiction to approve said QDRO orders.
 II ALIMONY (GENERAL STATUTES § 46B-82)
In addition to the assignment of assets under § 46b-81 of the General Statutes, the court may consider an award of periodic alimony.
The court was unpersuaded by the wife's expert witness that the plaintiff's earning capacity is between $270,000 to $386,000 a year and that he could be employed as a pathologist within six months. This is not an earning capacity case. The facts here are distinguishable and contrary to the facts in Millerv. Miller, 181 Conn. 610, 613 (1980); Schmidt v. Schmidt,180 Conn. 184, 189; McKay v. McKay, 174 Conn. 1, 2, Scavo v. Scavo, FA93 0309638, Judicial District of Fairfield, decided by this court on May 11, 1992 (Petroni, J.).
There was no evidence that the husband depleted his CT Page 7079 assets or his earnings to deprive the wife of financial support. Both parties knew of what assets they had and where they were invested during the entire marriage. Although the husband managed them, he made full disclosure to her and the parties shared equal control over them. The wife never sought a court order for temporary alimony during the past fifteen months they were separated because the husband continued to pay all her expenses through to the present. The husband kept accurate records of the parties' living expenses during the past eighteen months on a personal computer. The court finds that in 1993 the husband paid living expenses totalling $52,000 for the wife and $48,000 for himself for a total of $100,000. In 1994, the husband continued to pay all the wife's living expenses and, as of the date of the trial, there were no outstanding, unpaid bills.
The court finds the wife needs about $52,000 a year to meet her present living expenses.
Based on the evidence presented and the financial affidavits in file, the court finds that the husband supported his wife to the lifestyle she chose or was accustomed to. The equal assignment of approximately $1.32 million of liquid marital assets should earn each of them about $65,000 a year in tax free income based on a five percent return. The court believes that both parties should be able to enjoy the lifestyle they chose for themselves during the marriage.
The court found credible the husband's testimony that he has retired from medicine. He has not attempted to find work as a pathologist since his resignation from Stamford Hospital on October 1, 1993. However, the court is aware that the husband is only 46 years of age, in good health and could change his mind and re-enter the medical profession in some capacity. If that should occur, then the wife can move for modification of the $1.00 a per periodic alimony awarded hereafter.
Having considered all of the statutory criteria in § 46b-82 of the General Statutes, the case law, the financial affidavits and the evidence presented, the following order may enter:
2. The husband shall pay the sum of $1.00 per year to the wife as periodic alimony until his death the death of the wife, her remarriage or her cohabitation pursuant to statute. The husband shall provide his wife with a copy of his federal CT Page 7080 income tax return each year by April 15th and shall immediately notify her in writing if he becomes employed.
 III CUSTODY, CHILD SUPPORT AND INSURANCE
The parties agreed to joint legal custody of Margot with sole physical custody to the wife subject to reasonable rights of visitation to the husband.
As to child support, General Statutes § 46b-56(c) provides that, "In determining whether a child is in need of support and, if in need, the respective abilities of the parents to provide support, the court shall take into consideration all the factors enumerated in § 46b-84." In this case, the equal division of the marital assets gives both parties an equal ability to provide child support. The combined current net earned income of the parties of about $2,400 exceeds the child support guidelines; therefore they do not apply. The child support order must be fair, and it should consider the age and needs of the child. Battersby v. Battersby, 218 Conn. 467, 473 (1991).
Margot is a bright fourteen year old child and has earned a B+ average this past year at a public school in Darien. She has passed the examination and paid the entrance and uniform fees to attend Greens Farms Academy, a private school, with the knowledge and consent of the husband. The school believes she is an ideal candidate for this program. The court agrees with the wife that it is in Margot's best interest to attend this private school starting this fall. This court has the discretion to direct one or both of the parents to pay for a private education if the circumstances warrant. Cleveland v. Cleveland, 161 Conn. 452,461 (1971). Therefore, the following orders may enter:
3. CHILD SUPPORT
 (a) The husband shall pay to the wife child support of $300 a week until the child reaches majority.
 (b) In addition, the husband shall pay for the child's private school education at Greens Farms Academy, which is approximately $14,400 annually.
(c) The parties shall equally share in the cost of health CT Page 7081 insurance for Margot and all unreimbursed medical, dental and other health costs shall also be shared equally.
The following additional orders may enter:
4. PERSONAL PROPERTY AND EFFECTS:
 The husband shall retain title to the boat and flute and shall remove his personal effects including his boat gear, papers, books, clothing and photographic equipment within thirty (30) days from the date of this judgment. The wife shall retain ownership of the remaining personal property in the marital residence.
5. AUTOMOBILES:
 The husband shall retain ownership of his Honda and Volkswagen automobiles and the wife her ownership in the 1988 Volvo automobile.
6. LIFE INSURANCE:
 The husband shall carry life insurance in the amount of $100,000 naming the child as irrevocable beneficiary.
7. ATTORNEY'S FEES:
 The court has considered the criteria in §§ 46b-62 and 46b-82
and finds that the parties are able to pay their own attorney's fees.
ROMEO G. PETRONI, JUDGE