[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO MODIFY #198.03
Before the court is Motion to Modify the Judgment, Motion #198.03. The defendant seeks by modification of the judgment an order requiring the plaintiff to pay the defendant child support for the remaining two minor children of the marriage. The defendant has alleged a change of circumstances since the entry of the last order addressing the plaintiff's obligation to pay child support. For the reasons stated herein, the court finds a substantial change of circumstances.
The rather voluminous file and the evidence taken in this matter discloses the following background facts. The parties were divorced on April 11, 1985. At that time the plaintiff was granted custody of the parties' three minor children and the defendant was ordered to pay child support. That order was suspended for a period of time in the latter part of the 1980's when the defendant was unemployed because of injury. Subsequently, the child support order was reinstated. On October 16, 1992, the Court ordered that the defendant have physical custody of the two youngest children. Plaintiff was ordered to pay the defendant $66.00 per week child support. On March 1, 1993, by order of the court, that obligation was modified to $50.00 per week. On June 10, 1993, the defendant sought CT Page 11745-G modification of judgment seeking, among other relief sought, an increase in child support. At the time of the hearing held on July 13, 1993 plaintiff took the position that she could not work any more hours because of health problems and because she had a young child at home. Also her alimony was terminating as of that date because she was cohabiting with and about to marry her present husband. On July 13, 1993, the file discloses that child support was modified to $1.00 per week per child, which order took the plaintiff to her personal reserve amount.
The plaintiff's financial affidavit of July 13, 1993 discloses (alimony of $200.00 per week "subject to termination" and) income from employment with Dr. Marer of $158.42 per week gross and $136.78 per week net. It also disclosed receipt of $197.00 per week from child support (for children not of this marriage). She had a seven year old child at home with her. The child is now 9.
The plaintiff, now known as Darlene Pitzgalny, stayed in Dr. Marer's employ until June, 1994, at which time she was earning $11.25 per hour. She left that employ, in Woodbridge, Connecticut because she moved to Cromwell, Connecticut and felt a 45 minute commute each way was too much. From June 1994 to December 1994 she sought no employment, staying at home with her husband who was recovering from a spinal fusion. She then became employed in Hartford with Dr. Lassman earning $9.50 per hour. She was let go by Dr. Lassman in July, 1995, in anticipation of her planned voluntary leaving in August, 1995 to attend nursing school full time. The plaintiff commenced a full-time course of study in September, 1995. Her schooling is anticipated by her to be completed in June, 1997, at which time she will be a registered nurse.
The plaintiff's employment with the two physicians had been in their medical offices as a medical secretary/receptionist. As a result of previous schooling, she is also a trained phlebotomist and a trained Emergency Medical Technician. Her work with the doctors included phlebotomy. She has not worked for pay as an EMT but is a very experienced volunteer, having given approximately 2,800 hours of volunteer time from 1987 to 1993. Since early 1993 she has done very little, and since her move to Cromwell, she has not been able to devote the 24 hours per week commitment they require of an EMT volunteer.
For the period of July, 1994 to January, 1995, a seven month CT Page 11745-H period, the plaintiff went to classes two nights per week for four hours each night, or eight hours per week. The classes were work related and resulted in a raise.
The plaintiff is plagued with two painful and uncomfortable health maladies. She has been diagnosed with Intractable Migraines. These are migraine headaches, which when occurring, result in a temporary disabling condition including loss of strength in the left side, including the hand, vomiting, dehydration and "blinkers", a white flashing image. To help prevent the onset of these migraine headaches, the plaintiff medicates daily with three prescriptive drugs. She is under the treatment of a physician. The triggers for these headaches are 1) stress and/or 2) lack of sufficient sleep.
The plaintiff also suffers from Irritable Bowel Syndrome. Its symptoms are abdominal discomfort and occasional intestinal bleeds. She takes two medications regularly to control this condition.
The plaintiff has been hospitalized for the migraines on the average of four times a year, for anywhere from one day to three to four days. She has been hospitalized for the intestinal problem three times in the last one and one-half years. Cumulatively, then, she has averaged hospitalization of twelve days per year for these conditions. Notwithstanding these conditions, she remained steadily employed with Dr. Marer from 1990 to 1994. She received periodic raises. She worked an average of 13 to 18 hours per week in 1993. She voluntarily left that employment sometime after the 1993 hearing.
The plaintiff on her Financial Aid form projected that she would have earned $2,880. for 3 summer months of 1995 with Dr. Lassman, had she not been replaced early. Her hourly rate was $9.50. Therefore, she projected herself able to work 101.05 hours per month, or, about 23.32 hours per week in the summer of 1995.
In September, the plaintiff commenced her full-time course of study at the Wilcox School of Nursing. She spends 18 hours per week in class labs and clinical time and has spent a mandatory 8 hours over 6 weeks in other required school time. She studies 4 to 5 hours per day each and every day and more hours on weekend days. This means she spends an absolute minimum of 47 hours per week on her school work and studies. CT Page 11745-I
In the last 6 weeks, while in school, the plaintiff missed three days because of illness.
The court finds a substantial change in circumstances since July, 1993. The young child at plaintiff's home is now two years older. Plaintiff, notwithstanding her health difficulties, was working greater hours until she left for school. She projected anability to work at employment for 23.32 hours per week in the Summer of 1995 over a sustained period of three months. She is actually applying herself to the rigors of nursing study at the rate of 47 hours per week, as well as caring for her 9 year at home. The court finds that the plaintiff's medical condition is not preventing this work.
Defendant urges the court to find that the plaintiff has the capacity to work 30.5 hours per week at the rate of $10.375 per hour. Defendant argues that earning capacity can be found because plaintiff was leaving work for school.
The court finds that the July, 1995 firing of plaintiff by her employer was a direct result of her expressed intent to voluntarily leave that employment at the end of August 1995 for school.
 "In marital dissolution proceedings, under appropriate circumstances the trial court may base financial awards on the earning capacity rather than the actual earned income of the parties; Lucy v. Lucy, 183 Conn. 230, 234, 439 A.2d 302 (1981); Miller v. Miller, 181 Conn. 610, 611-12, 436 A.2d 279 (1980); when, as here, there is specific evidence of the defendant's previous earnings." Venuti v. Venuti, supra, 161; see also McKay v. McKay, 174 Conn. 1-2, 381 A.2d 527 (1977); Lev v. Lev, 10 Conn. App. 570, 573, 524 A.2d 674
(1987). It is particularly appropriate to base a financial award on earning capacity where there is evidence that the payor has voluntarily quit or avoided obtaining employment in his field. Miller v. Miller, supra, 612-13; Schmidt v. Schmidt, 180 Conn. 184, 189-90, 429 A.2d 470 (1980). Hart v. Hart, 19 Conn. App. 91, 94-95, 561 A.2d 151
CT Page 11745-J cert. denied, 212 Conn. 813, ___ A.2d ___ (1989).
The plaintiff has taken care of her present husband. She has taken care of her child presently at home with her in his tender young years. She seeks now to further her own education and training. While this is to her credit she must take care of her obligations to her two minor children who reside with the defendant.
Plaintiff voluntarily left employment in 1994 that paid $11.25 per hour because she didn't want to commute 45 minutes each way. She voluntarily did not work thereafter because she wanted to take care of her husband. This kept her out of the job market for a period of 4 months. In 1995, she voluntarily left employment earning $9.50 per hour. Plaintiff's hourly earning capacity continues to be interrupted and therefore unenhanced because of her voluntary interruptions in her employment.
Plaintiff has a self-declared capacity to work 23.32 hours per week. The court finds she has a present capacity to work 28 hours per week at the rate of $9.50 per hour. The court finds the plaintiff has a gross earning capacity of $266.00 per week. In her 1993 affidavit her Federal tax rate was 5.1% of her gross; her FICA rate was 7.5% of her gross; her State tax rate was 0.2% of her gross. At those rates her deductions she is entitled to from an earning capacity of $266.00 per week total $15.75, rendering a net of $231.95. Her child support obligation based upon the State of Connecticut Child Support Guidelines is $85.44 per week.
The judgment is ordered reopened and modified as follows. The plaintiff is ordered to pay the defendant child support in the amount of $85.44 per week for the two minor children, effective November 3, 1995.
Lynda B. Munro, Judge