[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried in Hartsdale, New York on September 26, 1987. The court has jurisdiction as the plaintiff has resided in Connecticut continuously for the last ten years. All statutory stays have expired. There are no children issue of the marriage. The evidence indicates that the marriage has irretrievably broken down, and judgment may enter dissolving the marriage on that ground.
This is second marriage for each party. Both are 52 years old and are well educated. The defendant is currently self-employed as a freelance management consultant. The plaintiff has been a self-employed interior designer, specializing in designing and remodeling kitchens and bathrooms.
The parties' relationship has been an unhappy one for sometime. As stated by the defendant, differences in values and inability to communicate with each other were impediments to a successful marriage. Each party must bear some responsibility for the failure of their partnership. The court declines to assess fault.
The major areas of disagreement at trial involved the issues of the plaintiffs health and her ability to work. Both parties offered, at great expense, extensive evidence from medical experts. Counsel for both parties are complimented for their thorough and well prepared presentations.
The plaintiff maintains she is currently disabled and cannot be gainfully employed because she suffers from chronic Lyme disease. The defendant disputes this and claims the plaintiff is capable of operating her business and is deliberately exaggerating her physical complaints to convince the court that her financial requests are appropriate.
After reviewing the evidence, including all exhibits and the testimony of the parties and their witnesses, the court makes the following findings on the issues of the plaintiffs health and ability to work.
(1) The plaintiff has not established her claim that she currently suffers from central nervous system Lyme disease; CT Page 7115
(2) The plaintiff is presently disabled as far as being able to work because of the following:
A. Drug abuse due to sedative/anxiolytic dependence;
B. Preoccupation with health concerns (Cluster 8 Personality Profile);
C. Migraine headaches.
(3) The prognosis as to the plaintiffs ability to work in the future is uncertain at the present time. However, a willingness on her part to undergo drug detoxification would alleviate her problems and improve her ability to function. Also, resolution of this lengthy and costly dissolution action should relieve some of her anxiety and permit the plaintiff to focus on her future plans.
The court has carefully considered the criteria set forth in General Statutes, Section 46b-62, 46b-8 1 and 46b-82 in reaching the decisions reflected in the orders that follow.
The following orders may enter.
1. Periodic Alimony.
The plaintiff has requested the court to fashion the alimony orders based on the defendant's earning capacity. Although use of earning capacity is appropriate in some cases, Schmidt v. Schmidt, 180 Conn. 184
(1980), this is not one of them.
The defendant last worked for Ernst and Young, an accounting and consulting firm, and his employment was terminated in July, 1999. Thereafter, the defendant worked as a self-employed consultant, and at the same time, pursued employment. He candidly admits his preference is to work for himself but would not turn down an attractive offer for employment. The defendant has offered valid reasons for his inability to find employment with either a large accounting firm or a large corporation.
The defendant expresses optimism that he can succeed in his own business, and the court is persuaded that he will. He appears to be a bright gentleman, with good credentials, who, once this case has concluded, will be able to direct his energies to his career. In short, the court believes the defendant is not voluntarily depressing his earnings by avoiding employment. Therefore, there is no basis to CT Page 7116 consider the defendant's earnings capacity.
The defendant has testified that he expects to produce in the year 2000 gross revenues of $100,000 and increase revenues to $150,000 in the following year. The anticipated business expenses are calculated by the defendant to be 20% of revenues. In addition, the defendant is hopeful of supplementing his income by employing his skills as a photographer. The periodic alimony award entered hereafter is based on the defendant's testimony as to his income for the years 2000 and 2001. Either party may seek modification of the order if there are substantial changes warranting a reexamination of the financial situations of the parties. The parties shall exchange copies of their federal income tax returns in April of each year for the previous calendar year for as long as periodic alimony is paid.
The defendant, during his lifetime, shall pay to the plaintiff as periodic alimony the sum of two thousand ($2000) dollars per month, payable one-half on the first and fifteenth of each month. The payments shall commence on July 1, 2000 and continue monthly thereafter, in advance, until the plaintiffs death, remarriage or December 31, 2000, whichever event first occurs.
Commencing January 1, 2001, the defendant's periodic alimony payments, unless previously modified or terminated, shall increase to twenty-five hundred ($2500) dollars per month, payable in advance, one-half on the first day and one-half on the fifteenth day of each month. The payments shall continue until the death of either party, the plaintiffs remarriage or July 1, 2007, whichever event first occurs.
If the plaintiff is still receiving periodic alimony in the year 2007, at the request of either party prior to July 1, 2007, the court will take a second look at the situation of the parties to determine whether to extend or terminate the term of the payments. The court will consider the criteria set forth in Section 46b-82 of the General Statutes to assist its decision.
Credible testimony was offered at trial that the plaintiff can improve her current health situation by seeking drug detoxification and thereafter addressing her various medical complaints by obtaining appropriate assistance. Only time will tell if the plaintiff takes positive action to help herself, and if she does, how successful the results will be as far as making her self-sufficient. Therefore, the decision to terminate alimony payments or extend them beyond July 1, 2007 should be determined at that time.
For the month of June, 2000, the defendant shall pay to and for the CT Page 7117 benefit of the plaintiff as periodic alimony the same payments ordered on January 18, 2000, pendente lite, for the months of January and February, 2000.
The periodic alimony orders are subject to the defendant's rights under General Statutes, Section 46b-86 (b).
2. Medical Insurance
The defendant shall cooperate in assisting the plaintiff if she exercises her COBRA rights. The payment of the premium shall be at the defendant's expense for the first year and at the plaintiffs sole expense thereafter.
3. Life Insurance
For as long as the defendant is obligated to pay periodic alimony, he shall maintain life insurance in the amount of One Hundred Fifty Thousand ($150,000) dollars naming the plaintiff as the irrevocable beneficiary. The defendant shall annually furnish the plaintiff with proof of coverage.
4. The Marital Residence — 141 Scribner Hill Road, Wilton, Connecticut
The parties dispute the market value of their residence. The court believes the defendant's appraisal to be closer to the current fair market value. The court finds the value to be $800,000. However, who turns out to be correct will be determined in the market place.
Within thirty days of the date of this judgment, the parties shall jointly select a real estate broker to market the property and to list the property for sale at an agreed listing price. If the parties are unable to agree, the property shall be listed for $850,000. Any offer within five (5%) percent of the listing price shall be accepted. The defendant shall have access to the home to assist with the preparation of the home for the market. While the home is on the market, the plaintiff shall cooperate with the listing broker and allow access to the house by prospective purchasers. The court retains jurisdiction as to the conditions and terms of sale and all issues collateral thereto.
Commencing July 1, 2000, pending the sale of the residence, the plaintiff shall have exclusive possession thereof and shall be responsible for the payment of all utility bills, telephone, and cable TV charges. The defendant shall make the mortgage payments, the real property tax payments and the homeowner insurance payments. He shall be reimbursed for all such payments from the proceeds of sale at the time of CT Page 7118 the closing of title.
The proceeds of the sale shall be disbursed as follows:
(A) Payment of the real estate commission, usual closing costs and the outstanding mortgage;
(B) Reimbursement to the defendant for all mortgage payments, property tax payments, and home owner's insurance payments and any other costs required to repair the property or make it ready for sale from July 1, 2000 till the date of sale;
 (C) Payment of the bills owed Glen Gate Irrigation system ($453) and Wes Turner ($1073);
 (D) Payment of Dr. Kabak's fee for testifying ($1500);
(E) Payment of the following credit card charges:
1. Citibank Visa, balance as of 10/1/99
2. First USA, balance as of 10/1/99
3. Chase Visa, balance as of 10/1/99
(F) The balance of the proceeds shall be divided equally between the parties. Each party shall pay his or her share of capital gains tax, if any, incurred as a result of the sale.
5. Other Assets
The brokerage accounts and deferred assets of the parties shall be equally divided between them. The cost of preparing any Qualified Domestic Relations Order shall be shared equally. The assets shall be valued as of May 3 1, 2000 together with all interest accruing thereon until the date of distribution. Each party shall retain any other bank accounts in his or her sole name. Each party shall retain, whether in a sole account or otherwise, the $30,000 each of them withdrew pursuant to the parties' stipulation dated January 4, 2000, free and clear of any claim by the other.
The defendant shall retain his one hundred (100%) percent interest in R.L. Berkowitz and Assoc. The plaintiff shall retain her entire interest in her business corporation, known as Creative Design Strategies, Inc. Each party shall remove the other as an officer of her or his respective corporation and indemnify and hold the other harmless with respect to any CT Page 7119 financial obligations resulting from her or his former status as a corporate officer.
6. Miscellaneous
As an assignment of property, the defendant shall pay to the plaintiff the sum of $6600. Payment shall be made from the defendant's share of the net proceeds received from the sale of the marital residence.
The defendant, during the month of May, 2000, invaded assets for his personal use. This order is to equitably adjust the division of assets.
7. Motor Vehicles
The plaintiff is awarded the 2000 Jeep Cherokee, and the defendant is awarded the 1991 Mazda Miata and the 1995 Saab. The parties shall execute all documents necessary to transfer title of the vehicles to each other in accordance with this order, within then (10) days of this judgment.
8. Personal Property
The defendant shall retain his personal effects and the family dog, Falcor Barkowitz. The plaintiff shall retain her personal effects, including her jewelry, watches and fur coat.
The plaintiff is awarded the entire 1998 New York State tax refund previously received by her, although improperly and prematurely appropriated by her.
The husband shall be permitted to walk through the marital residence for the purpose of preparing a written inventory of furniture, furnishings and personal effect to which he believes he is entitled. The date and time of the walk through shall be by agreement of the parties and shall take place no later than thirty days after the date of this judgment. If the parties are unable to agree on a date, it shall be on Saturday, June 24, 2000 at 10 a.m.
Any items on the defendant's inventory disputed by the plaintiff shall be referred to the Family Relations Office for mediation. If mediation fails, the Family Relations Office shall submit a written report to the court stating the positions of the parties and the recommendations of the Family Relations Officer. This court will then issue an order as to the disputed items.
9. Debts
CT Page 7120
The balances due Citibank Visa, First USA, and Chase Visa credit cards listed on the defendant's financial affidavit that were outstanding on October 1, 1999 shall be paid, as previously ordered, from the proceeds of the sale of the marital residence. All charges subsequent to October 1, 1999 shall be the sole responsibility of the plaintiff. She shall indemnify and hold harmless the defendant from any liability thereon.
Each party shall be solely responsible for the payment of her/his experts' fees and charges and indemnify and hold harmless the other from any liability thereon.
10. Counsel Fees
The defendant shall pay to the plaintiff as counsel fees the sum of thirty ($30,000) dollars. He shall be credited with the ten thousand $10,000) dollars previously advanced to the plaintiff, leaving a balance due of twenty thousand ($20,000) dollars.
 Judgment may enter accordingly. ________________ NOVACK, J.