[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This an action for dissolution of marriage brought by the plaintiff wife on the grounds of irretrievable breakdown. The defendant has filed a cross-complaint alleging the same grounds. The parties were married in East Haven, Connecticut, on May 26, 1978. They have three children, two of whom are still in their minority. Their oldest child, Vincent Benevento, Jr., is nineteen years old. The two minor children are Sara Marie Benevento, who was born on May 6, 1984, and is seventeen years old; and Andrew Paul Benevento, who was born on December 30, 1987, and is thirteen years old. The court heard evidence on four days in April, July and August of this year. Both parties appeared at trial and testified; and a representative of the plaintiffs employer also testified. The parties also submitted documentary evidence.
The plaintiff has lived continuously in the State of Connecticut since before November 21, 1999. The court has jurisdiction in this matter. The court finds that allegations in the complaint and cross-complaint are true as to the date and place of the marriage, the minor children born issue of the marriage, and neither party nor child of the marriage having CT Page 14550 been the recipient or beneficiary of support or maintenance from the State of Connecticut. The marriage has broken down irretrievably.
The parties have already resolved the questions of custody and visitation of the two minor children, and on April 30, this court adopted the jointly proposed parenting plan as an order of court. It provides for joint custody, the minor children residing with their mother during the school week, their father on weekends, and alternating holidays between the parents. The principal issues for the court now to resolve are the appropriate financial and property orders.
The plaintiff is fifty-three years old. She has a high school education, after which she took some college-level courses but received no advanced degree. She is a licensed practical nurse and has worked in that capacity, either full-time or part-time, for the last twenty-nine years. She currently works as a Holter lab technician at the Hospital of St. Raphael in New Haven. Her employer has classified this position as a part-time hourly job for twenty-four hours a week; she earned $27,000 in that position during 1999. Since last December, when a more highly-paid supervisor retired from her job unit, she has been working almost full time with increased responsibilities and at an increased hourly rate. This year, working more hours at the greater hourly rate, she will earn approximately $50,000 (if she stays at the current compensation level and hours of work.) The hospital has not yet decided whether to refill the vacated position or, if so, the qualifications that would be required. At the time of trial it was thus uncertain whether and when she will be assigned permanently to the increased job responsibilities with greater compensation or return to her previous part-time work for twenty-four hours a week. The plaintiff has many health problems, including asthma, mitral valve prolapse, irritable bowel syndrome, and psychiatric problems. Various physical ailments — such as occasional shortness of breath, heart palpitations, and chest and back pain — limit her employment activities somewhat; since she cannot lift anything weighing more than twenty pounds, she could not carry out many responsibilities required on a nursing floor. She is currently in therapy with a psychologist and taking various psychotropic medications for stress and depression.
The defendant is forty-six years old. He has a bachelor's degree in social work, a masters in general counseling, and has taken but not completed a sixth-year program in marriage and family therapy. He was a state probation officer for twenty-one years. His income before retiring in September 2000 was $70,000 per year in that job. He receives a hazardous duty pension of $2,750 per month. As trial ended, he was unemployed. He worked briefly during the school year 2000-2001 as a teacher at a private school until quitting that job this February. He CT Page 14551 said that he quit this job because it did not meet his expectations and was more difficult than warranted by the income he was receiving for it. He testified that he is now looking for work in the fields of social work, counseling or therapy and claimed that if he found such a job, his starting income would likely be in the $25,000 to $40,000 range. He has minor health problems from stress and bleeding ulcers.
During the early years of the marriage, the wife worked full-time until her first child was born. Three months later, she returned to work on a part-time basis, mostly on weekends, when the husband was responsible for the children. This work pattern — the husband working during the week and wife responsible for the children, and vice-versa on the weekends — continued for the rest of the marriage (and has been incorporated in the parties' parenting plan). The husband used his income to pay the mortgage and most household expenses, while the wife paid for food and medical expenses.
During the marriage, they lived at three different homes, two of which were in East Haven before they moved to the last marital home in Madison, which they sold for $318,500 after the divorce proceedings began. Both parties contributed their funds and labor to the maintenance and appreciation of these properties. By agreement of the parties, they split the $180,000 proceeds from the recent sale of the Madison property. At trial the plaintiff testified she agreed, but had not consented, to equal division of the sale proceeds because she needed funds from the sale of the house to purchase her new condominium. She asked the court to divide the balance of parties' marital property to adjust for what she claimed was an unfair distribution from the sale. The wife purchased a two-bedroom condominium in Madison for $144,500 with her share of the proceeds. She removed the carpeting in the condominium because of her asthma, spent $6,000 to install hardwood floors, had the condo repainted, and bought all new furniture for $3,500. She has a mortgage on it for $75,000, monthly mortgage payments of $775, and equity of $69,000 in the condominium. The husband bought a four-bedroom ranch on an acre in Madison near Hammonasset State Beach for $163,500. He has a mortgage for $100,000, monthly mortgage payments of $897, and equity of $62,500. He testified at trial that the house needs numerous renovations, which his financial affidavit estimated as costing $20,000.
In their testimony at trial, each party blamed the other for the breakdown of their marriage. According to the plaintiff, after she had a complete hysterectomy in 1996, the defendant became distant from her, stopped communicating with her, and started developing outside friends and interests that excluded her. The defendant, on the other hand, said that the plaintiff had always been extremely difficult to get along, is moody and depressed, and that her depression and mood swings worsened CT Page 14552 after the birth of their third child.
The court had an opportunity not only to hear the parties and review the exhibits they submitted but to evaluate their demeanor and credibility. From the totality of evidence presented, the court finds each party's story plausible, credible, and consistent on many points. Both parties, in their own testimony and through their attorney's cross-examination of the other, offered numerous examples of what claimed to be "fault" on the other party's part. In evaluating such testimony and considering the causes of the dissolution, the court's decision here ultimately rests on its assessment of the parties' credibility in light of the overall evidence.[1] The court does not find fault to lie primarily with either party for the breakdown in their marriage. Each was responsible, in his and her own way.
One significant fact this court must determine that would affect its property and financial awards pertains to the circumstances surrounding the defendant's leaving his employment as a probation officer earning $70,000 a year. The defendant testified credibly that he had long planned to retire from that position when he had been there twenty years and that his wife had known about his intention to do so. When he learned a few years ago that the State of Connecticut had underfunded his pension by $12,000, his wife and he took out a loan to make up that difference. There would have been little need to take out a loan unless both had assumed he would retire in the near future, for otherwise he could have made up the shortfall by increasing payroll deductions at work over a significant period of time. The defendant credibly justified the timing of his departure from the probation office by explaining that recent reorganization of the judicial branch had left him very dissatisfied with his position.
Since the court finds that leaving his probation job was a long-term joint plan of the parties, the court concludes it is not appropriate to find that his former salary as a probation officer represents the defendant's "earning capacity." There is no credible evidence here that the defendant "wilfully depleted his or her earnings with a view toward denying or limiting the amount of alimony to be paid;" Schmidt v.Schmidt, 180 Conn. 184, 190, 429 A.2d 470 (1980); or "wilfully restricted his earning capacity to avoid support obligations." Bleuer v. Bleuer,59 Conn. App. 167, 170, 755 A.2d 946 (2000). At trial, however, the defendant admitted in his own testimony that he has a present earning capacity of at least $25,000 per year, and this court so finds.
The defendant is several years younger than the plaintiff. The plaintiff will probably have reached the peak of her earning capacity if her current temporary position becomes full-time. With his educational CT Page 14553 and work background and vocational skills, on the other hand, the defendant has significantly greater employability and vocational potential than the plaintiff. His overall health is much better than his wife's. As a result, he also has greater opportunity in the future to acquire assets and income than his wife does. The new homes of each party present relatively similar financial demands on each. With the plaintiff having more health problems, fewer years until normal retirement age, fewer financial and employment prospects, and more indebtedness than the defendant, the court finds, from the totality of the evidence, that the plaintiffs overall financial needs are greater than those of the defendant despite her present income being more than his.
After considering all the statutory factors set forth in General Statutes § 46b-82 as to alimony, § 46b-81 (c) as to assignment of property, § 46b-62 as to counsel fees, and § 46b-215a-1 et seq., Regs. Conn. State Agencies, as to child support, the court hereby enters the following orders:
1. Dissolution of marriage. The court dissolves the marriage on the grounds of irretrievable breakdown, effective this date.
2. Custody and visitation: The parenting plan of the parties, adopted by this court on the first day of trial, April 30, 2001, is incorporated herein.
3. Alimony. The court orders that the defendant pay the plaintiff one dollar a year alimony, terminable upon death of either party, remarriage of the plaintiff, or her cohabitation with a male pursuant to General Statutes § 46b-86 (b). Said amount may be modifiable should the plaintiffs income decrease significantly (from the amount now being earned in the full-time position with increased compensation), the defendanf's earned income increase significantly above the earning capacity found herein, or should the Superior Court, applying the statutory factors, deem it appropriate to do so.
4. Child Support.[2] For child support, the court finds that the child support guidelines establish $82 per week as the presumptive weekly support amount due from defendant to plaintiff, based on his current retirement pension, divided equally between the two parties, and the wife's current income from employment. Based on the court's finding that the plaintiff has an earning capacity of at least $25,000 per year, the court finds that it is appropriate to apply such as an appropriate deviation criterion to vary from the presumptive support amount, pursuant to § 46b-215a-3(b)(1)(B), Regs. Conn. State Agencies. Adjusting the child support award to take into account such an earning capacity would result in the defendant owing the plaintiff the weekly sum of $169 in CT Page 14554 child support for the two minor children.
Since the defendant will, under the parenting plan adopted by order of this court, care for the minor children each weekend, his time with them will exceed the normal visitation schedule. See Preamble to Child Supportand Arrearage Guidelines(h)(4). While these care responsibilities for the minor children will increase the defendant's expenses, a downward deviation in the child support award based on "shared physical custody," § 46b-215a-3(b)(6)(A), Regs. Conn. State Agencies, would not leave sufficient funds for the plaintiff to meet the basic needs of the minor children. Accordingly, pursuant to § 46b-215a-3(b)(6)(A) (ii), Regs. Conn. State Agencies, it is not appropriate to apply such a deviation criterion. The court accordingly orders the defendant to pay weekly child support to the plaintiff in the amount of $169 per week for the two minor children.
5. Health insurance. The defendant shall maintain health and dental insurance for the minor children. The plaintiff shall be responsible for paying the first one hundred dollars each year of unreimbursed health-related expenses (which shall include medical, dental, pharmaceutical, ophthalmological/optical, auditory, psychiatric or psychological expenses) for the minor children. The plaintiff shall pay 70.17 per cent and the defendant 29.83 per cent of the balance of any unreimbursed health-related expenses. The parties shall each be responsible for paying for their own individual health insurance.
6. Sale of marital home. The parties shall divide equally the net proceeds from the sale of the marital estate.
7. Bank accounts, motor vehicles, real estate: Each party shall retain and be the sole owner, free and clear of the claim of the other, of the real estate, bank accounts, safe deposit boxes, and motor vehicles listed on their respective financial affidavits.
8. Stocks and bonds: Each party shall retain and be the sole owner, free and clear of the claim of the other, of stocks, bonds and mutual funds listed on their respective financial affidavits.
9. Personal property: The plaintiff shall be the owner, free and clear of any claim of the other, of the large television set, and the video cassette recorder and table associated with that TV, now in the possession of the defendant. The plaintiff shall also be the sole owner, free and clear of any claim of the other, of her wedding dress and the children's baby books. The defendant shall transfer possession of these items to the plaintiff within thirty days of this order. Each party shall retain their individual jewelry and personal property. The parties shall CT Page 14555 divide equitably any marital personal property not encompassed by this order.
10. Defendant's Pension Plan: The defendant is the beneficiary of a pension plan from the State of Connecticut by virtue of his years of service as a judicial probation officer. At present, he is receiving the sum of $2,750 monthly from that pension. The plaintiff is awarded a one-half interest in the pension being received by the plaintiff. The plaintiff shall draft, if necessary, a Qualified Domestic Relation Order (QDRO) to effectuate this award. The draft shall be submitted to the defendant for his review and to the court for its approval. The court shall retain jurisdiction in order to enforce this provision.
11. Plaintiffs IRA and retirement plan: The plaintiff shall retain her Superior Savings IRA valued at approximately $6,888 and her retirement benefits earned by virtue of her employment at St. Raphael's Hospital.
12. Debts and Liabilities: Each party shall be responsible for paying the debts and liability listed on their respective financial affidavits and shall indemnify and hold the other harmless as to the same.
13. Life insurance for benefit of the minor children: The defendant shall maintain the $10,000 life insurance policies he has already purchased for each of the two minor children.
14. Tax exemptions: Each party shall take one tax exemption each for the two minor children until Sara no longer qualifies. After that, the benefit of the minor child Andrew as a tax deduction/exemption shall alternate between the parties, with the plaintiff entitled to take the exemption the first such year and the defendant the following year.
15. Counsel Fees: Considering all the statutory factors, including the respective financial abilities of the parties, the court orders the defendant to pay the plaintiff the sum of $5,000 toward payment of her counsel fees within thirty days of the date of these orders. Each of the parties shall pay whatever other amounts are still due and owing to their respective attorneys.
 STEPHEN F. FRAZZINI JUDGE OF THE SUPERIOR COURT